J-A16018-16

2017 PA Super 13

| LUCINDA A. CARDINALE AND IOLA HUGNEY, ON BEHALF OF THEMSELVES AND ON BEHALF OF ALL THOSE SIMILARLY SITUATED | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| v. | |
| R.E. GAS DEVELOPMENT, LLC, AND REX ENERGY CORPORATION | |
| APPEAL OF: IOLA HUGNEY, ROBERT L. HENRY AND ELAINE M. HENRY | No. 1186 WDA 2015 |

Appeal from the Order July 6, 2015
In the Court of Common Pleas of Clearfield County
Civil Division at No(s): 2011-1791-CD

| MARY R. BILLOTTE, ON BEHALF OF HERSELF AND ON BEHALF OF ALL THOSE SIMILARLY SITUATED | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| v. | |
| R.E. GAS DEVELOPMENT, LLC, AND REX ENERGY CORPORATION | |
| APPEAL OF: IOLA HUGNEY, ROBERT L. HENRY AND ELAINE M. HENRY | No. 1187 WDA 2015 |

Appeal from the Order July 6, 2015
In the Court of Common Pleas of Clearfield County
Civil Division at No(s): 2012-1099-CD

BEFORE: SHOGAN, OLSON and STRASSBURGER,* JJ.

*Retired Senior Judge assigned to the Superior Court.

OPINION BY OLSON, J.:                        **FILED JANUARY 17, 2017**

Appellants, Iola Hugney, Robert L. Henry, and Elaine M. Henry, appeal from the orders entered on July 6, 2015, denying the Motions for Class Certification that were filed on behalf of "Lucinda A. Cardinale and Iola Hugney, on behalf of themselves and on behalf of all those similarly situated," and "Mary R. Billotte, on behalf of herself and on behalf of all those similarly situated."   After careful consideration, we vacate and remand.

On October 25, 2011, Lucinda A. Cardinale ("Cardinale") and Iola Hugney ("Hugney") filed a class action complaint against R.E. Gas Development, LLC ("R.E. Gas") and Rex Energy Corporation ("Rex Energy") (hereinafter, collectively, "the Defendants"),[1] on behalf of themselves and on behalf of all those similarly situated.   Cardinale and Hugney Complaint, 10/25/11, at 1-17.   The complaint was docketed at 2011-1791-CD and, within their complaint, Cardinale and Hugney claimed that, in 2008, the Defendants entered into Marcellus Shale oil and gas leases with a number of individuals in Pennsylvania, including Cardinale and Hugney.   *Id.* at ¶¶ 10-11.  According to the complaint:

---

[1] Within the Cardinale and Hugney Complaint, Cardinale and Hugney averred that R.E. Gas is a wholly-owned subsidiary of Rex Energy.  Cardinale and Hugney Complaint, 10/25/11, at ¶ 5.

- 2 -

Rex Energy is an independent oil and gas company that operates in the Appalachian Basin where it produced approximately 2.8 Million Mcf of natural gas per day in 2008. . . . Rex Energy used its wholly owned subsidiary[,] R.E. Gas[,] to obtain oil and gas leases in Clearfield County and elsewhere in Pennsylvania.

. . .

In 2008[,] R.E. Gas delivered . . . to each plaintiff and each class member the standard form Oil and Gas Lease and the standard form memorandum of lease into which all of the required information, such as the lessors' identities and property identifications had been inserted. Each of the standard form Oil and Gas Leases was identical or substantially identical in all material respects except for references to the identity of the lessor, the description of the leased premises and the amount of the prepaid rental or bonus that was to be paid. The amount of the prepaid rental or bonus depended upon the number of acres that were included in the standard form Oil and Gas Lease.

*Id.* at ¶¶ 7, 9, and 15.

Cardinale and Hugney claimed that they signed the Oil and Gas Lease, an Addendum, an Order for Payment, and a Memorandum of Oil and Gas Lease, and then delivered the executed documents either to R.E. Gas or to R.E. Gas' agent and landman, Western Land Services, Inc. *Id.* at ¶¶ 12-13, 16 and 18. R.E. Gas then "executed and accepted" the documents from Cardinale on July 23, 2008 and from Hugney on August 6, 2008. *Id.* at ¶¶ 17 and 19. Cardinale and Hugney claimed:

Under the terms of [] Cardinale's Oil and Gas Lease, R.E. Gas had to pay [] Cardinale $105,875.00 within [60] banking days of its receipt of [] Cardinale's order for payment and executed oil and gas lease, which occurred on or shortly after July 23, 2008. R.E. Gas's obligation to pay was subject only "to its inspection, approval of the surface, geology and title" of the leased premises.

- 3 -

> Under the terms of [] Hugney's Oil and Gas Lease, R.E. Gas had to pay [] Hugney $71,925.00 within [60] banking days of its receipt of [] Hugney's order for payment and executed oil and gas lease, which occurred on or shortly after August 6, 2008. R.E. Gas's obligation to pay was subject only "to its inspection, approval of the surface, geology and title" of the leased premises.

*Id.* at ¶¶ 25-26 (paragraph numbering omitted).

According to the complaint, after the 60-day time period expired, the Defendants "den[ied] that any contract or lease interest exist[ed] between [the Defendants and Cardinale, Hugney,] or those similarly situated to [Cardinale and Hugney]" and the Defendants failed to pay the bonuses or rents due to the landowners. *Id.* at ¶¶ 28-29. Further, the Cardinale and Hugney Complaint claimed that the Defendants denied the leases either without having inspected the landowners' properties or without having inspected the land within the requisite "60 banking days" after R.E. Gas received the leases and orders for payment. *Id.* at ¶¶ 30-33. Finally, the complaint claimed that the Defendants "denied that any contract or lease with class members existed not because of any purported right to inspect and approve the surface, geology or title, but for other reasons, including but not limited to [D]efendants' decision to reduce capital expenditures in late 2008" due to the economic downturn. *Id.* at ¶ 43(e).

The Cardinale and Hugney Complaint contained three counts: breach of contract against R.E. Gas; tortious interference with contract against Rex

Energy; and civil conspiracy against both Defendants.  Moreover, Cardinale

and Hugney sought to represent the following class in the lawsuit:

> All persons who signed an oil and gas lease in 2008 with
> R.E. Gas Development, LLC, related to property located in
> Clearfield County, Pennsylvania, or elsewhere in
> Pennsylvania for which Western Land Services, Inc., acted
> as agent for or represented R.E. Gas Development, LLC, and
> for which R.E. Gas Development, LLC, did not pay amounts
> specified by the oil and gas leases or orders for payment,
> including the applicable pre-paid rental or "bonus"
> payments.

*Id.* at ¶ 41.

The following contractual documents were attached to the Cardinale

and Hugney Complaint:  the Oil and Gas Lease, an Addendum, a

Memorandum of Oil and Gas Lease, and an Order for Payment.  In relevant

part, the Oil and Gas Lease between Hugney and R.E. Gas reads as follows:[2]

**OIL AND GAS LEASE
(PAID UP)**

> Project: Skywalker III
> THIS AGREEMENT is made as of the 6<u>th</u> day of <u>AUGUST</u>,
> 20<u>08</u>, by and between <u>Iola Hugney</u> . . . as Lessor, and R.E.
> Gas Development, LLC, . . . as Lessee.

---

[2] The Oil and Gas Lease, Memorandum of Oil and Gas Lease, and Order for Payment are standard forms.  As the complaint correctly states, Cardinale's documents are "identical or substantially identical in all material respects [to Hugney's documents,] except for references to the identity of the lessor, the description of the leased premises and the amount of the prepaid rental or bonus that was to be paid."  Cardinale and Hugney Complaint, 10/25/11, at ¶ 15.  Therefore, we will only recite the relevant terms of Hugney's documents.  Moreover, we will not restate the terms of the Addendum, as the Addendum is irrelevant to the current appeal.

1. Lessor, for and in consideration of One Dollar ($1.00), and other good and valuable consideration, the receipt of which is hereby acknowledged, and the covenants and agreements of the Lessee hereinafter contained, does hereby grant, lease and let unto Lessee the land described below, including all interests therein Lessor may acquire by operation of law, reversion or otherwise, (herein called the "Leasehold Estate"), exclusively, for the purposes of exploring by geophysical and other methods, drilling, operating for and producing oil and/or gas from any strata and any depth . . . together with all rights, privileges and easements . . . useful or convenient in connection with the foregoing and in connection with treating, storing, caring for, transporting and removing oil and/or gas produced from the Leasehold Estate. . . .

2. It is agreed that this lease shall remain in force for a primary term of **five (5)** years from the date of this lease, and as long thereafter as operations are conducted upon the Leasehold Estate or on lands pooled or unitized therewith with no cessation for more than 90 consecutive days. . . .

3. Within sixty (60) days from the date of execution of this lease, Lessee agrees to pay to the Lessor the sum of [**$71,925.00**] as full and complete bonus payment for this lease for the entire primary term of this lease. This is a paid-up lease and no delay rentals shall be due. The bonus paid hereunder is consideration for this lease and shall not be allocated as mere rental for a period.

4. Lessee covenants and agrees to pay the following royalties: [stating the computation of royalties]. . . .

. . .

/s_____
Iola Hugney


. . .


This instrument was prepared by Timothy J. Kotzman, agent for R.E. Gas Development LLC. . .

- 6 -

Oil and Gas Lease between Hugney and R.E. Gas, 8/6/08, at 1-4.

The Memorandum of Oil and Gas Lease between Hugney and R.E. Gas reads, in relevant part, as follows:

## MEMORANDUM OF OIL AND GAS LEASE

**Project: Skywalker III**

THIS MEMORANDUM OF LEASE, dated this 6th day of August, 2008, by and between Iola Hugney . . . hereinafter called Lessor . . . and R.E. Development LLC . . . hereinafter referred to as "LESSEE". . . .

### WITNESSETH:

1. For and in consideration of Ten Dollars ($10.00) and other good and valuable consideration paid and to be paid by Lessee to Lessor and in further consideration of the rents reserved and the covenants and conditions more particularly set forth in a certain lease between Lessor and Lessor dated **August 6**, 2008, (hereinafter referred to as the "Lease") does hereby lease and let exclusively unto Lessee the following described premises: [describing the leased premises]. . . .

Containing a total of **28.77** acres, more or less, (hereinafter referred to as the "Premises") for the purpose of exploring for . . . , drilling, operating, producing and removing oil, and gas and all the constituents thereof. . . . .

2. TO HAVE AND TO HOLD the Premises for a Primary Term of **five (5)** years from **August 6**, 20**08** and for as long thereafter as prescribed payments are made, or for as long thereafter as operations are conducted on the Premises in search of oil, gas or their constituents. . . .

3. The rental, covenants, provisions and conditions of the within Memorandum of Lease shall be the same as the rental, covenants, provisions and conditions set forth in the Lease to which rental, covenants, provisions and conditions

referenced in hereby made and the same are hereby incorporated by reference as though fully written herein.

. . .

5. This memorandum of Lease is executed in simplified short form for the convenience of the parties and for the purpose of recording the same, and this Memorandum of Lease shall not have the effect of in any way modifying, supplementing or abridging the Lease or any of its provisions as the same or now or may hereafter be in force and effect.

. . .

/s_____
Iola Hugney

. . .

This instrument was prepared by Timothy J. Kotzman, agent for R.E. Development LLC. . . .

Memorandum of Oil and Gas Lease between Hugney and R.E. Gas, 8/6/08, at 1-2.

The Order for Payment then declares:

## ORDER FOR PAYMENT

Lessee shall, subject to its inspection, approval of the surface, geology and title, make payment to Lessor as indicated herein by check within 60 banking days of Lessee's receipt of this Order For Payment and the executed Oil and Gas Lease associated herewith. No default shall be declared for failure to make payment until 20 days after written notice from Lessor of intention to declare such default. . . .

For collection, the original copy herein must be submitted directly to Lessee at the address below along with an executed original Oil and Gas Lease.

PAYEE (Lessor):            <u>Iola Hugney</u>

Address:                   . . .

Phone:                     . . .

The amount of:             ($<u>71,925.00</u>) Dollars

This payment represents full consideration for a <u>Five (5)</u> year paid-up Oil and Gas Lease dated <u>August 6</u>, 2008 covering the following described lands: [stating a description of the land].

. . .

Issued on behalf of Lessee by:

<u>/s                      </u>
Timothy J. Kotzman, Agent


R.E. Gas Development LLC

. . .

    This Order for Payment expires one year from date of issuance, unless paid sooner, terminated or replaced by Lessee.

. . .

Order for Payment, 8/6/08, at 1.

    As this Court previously explained:

> [The Defendants] filed preliminary objections to the complaint. Their objections span[ned 27] pages and consist[ed] of [84] numbered paragraphs. After [Cardinale and Hugney] filed their response to the objections, the trial court entered the following order.
>
> > Now, this 9th day of May, 2012, following argument on [the Defendants'] Preliminary Objections to Class Action Complaint and receipt and review of the parties' briefs

- 9 -

and applicable case law, it is the ORDER of this [c]ourt as follows:

1. As to [the Defendants'] Demurrer to the Complaint in its entirety this [c]ourt agrees that as a matter of law [the Defendants] did not accept [the Cardinale and Hugney Plaintiffs'[3]] offer[s] to enter into binding gas leases.

2. As such, no contracts were formed between [the Cardinale and Hugney Plaintiffs] and R.E. Gas.

3. Accordingly, it is the ORDER of this [c]ourt that [the Defendants'] Demurrer be and is hereby GRANTED. [Cardinale and Hugney's] Complaint is hereby DISMISSED in its entirety, with prejudice; and

4. In support of its dismissal the [c]ourt hereby adopts the legal reasoning and conclusions as set forth in paragraphs 8 through [55] of [the Defendants'] Preliminary Objections to Class Action Complaint filed on January 25, 2012.

Trial Court Order, 5/10/12[, at 1]. . . .

In paragraphs eight through [55] of their preliminary objections, [the Defendants] presented the following arguments in support of their request for a demurrer to [Cardinale and Hugney's] complaint.

According to [the Defendants], the parties never entered into a binding lease/contract. In support of this position, [the Defendants] noted that, in addition to signing the "Oil and Gas Leases," [the Cardinale and Hugney Plaintiffs signed "Orders for Payment." [The Defendants] highlighted the following language from the "Orders for Payment:"

---

[3] As a shorthand, we will refer to Cardinale, Hugney, and the proposed members of the class Cardinale and Hugney wished to represent as "the Cardinale and Hugney Plaintiffs."

Lessee[, *i.e.,* R.E. Gas,] shall, **subject to its inspection, approval of the surface, geology and title,** make payment to Lessor[, *i.e.,* the Cardinale and Hugney Plaintiffs] as indicated herein by check within 60 days of Lessee's receipt of this Order For Payment and the executed Oil and Gas Lease associated herewith.

[Order for Payment, 8/6/08, at 1 (emphasis added)]. [The Defendants] also pointed out that the "Orders for Payment" state, "This Order for Payment expires one year from date of issuance, unless paid sooner, terminated or replaced by Lessee." *Id.*

The thrust of [the Defendants'] argument was as follows:

. . . R.E. Gas did not make offers to [the Cardinale and Hugney Plaintiffs] to enter into contracts that include the Bonus Payments because the Orders for Payment: (i) gave R.E. Gas an unlimited right to terminate the Orders of Payment and, therefore, decide later the nature and extent of its performance, and (ii) required a further manifestation of assent by R.E. Gas.

As a result, the provision of the Proposed Leases and the Orders for Payment was merely an invitation to bargain on the part of R.E. Gas. Then [the Cardinale and Hugney Plaintiffs], by signing and returning the Proposed Leases and Orders for Payment, made offers to R.E. Gas to enter into the Proposed Leases and Orders for Payment under the terms and conditions contained in those documents.

However, R.E. Gas explicitly rejected [the Cardinale and Hugney Plaintiffs'] offers in Rejection Letters.

As a result, because R.E. Gas rejected [the Cardinale and Hugney Plaintiffs'] offers, no contracts that include Bonus Payments were ever formed. Therefore, the [c]ourt should . . . dismiss Count I of the Complaint as legally insufficient.

[The Defendants' Preliminary Objections, 1/24/12,] ¶¶ 48-51 (citations omitted). In paragraphs [52] through [55] of their preliminary objections, [the Defendants]

- 11 -

argued that, because no contracts were ever formed by [the Cardinale and Hugney Plaintiffs] and R.E. Gas, counts two and three of the complaint also are legally insufficient and should be dismissed.

***Cardinale v. R.E. Gas Dev., LLC***, 74 A.3d 136, 138-139 (Pa. Super. 2013).

As noted, on May 10, 2012, the trial court sustained the Defendants' preliminary objections and dismissed the Cardinale and Hugney Complaint. Cardinale and Hugney filed a timely notice of appeal and this Court vacated the trial court's order in a published opinion. Within this Court's opinion, we held that the trial court erred when it concluded that "the parties never entered into contracts/leases." ***Id.*** at 140.

At the outset, the ***Cardinale*** Court held that the following clause in the Oil and Gas Lease "places an unconditional duty upon R.E. Gas to pay [Hugney] the bonus payment:"

> 3. Within sixty (60) days from the date of execution of this lease, Lessee agrees to pay to the Lessor the sum of [**$71,925.00**] as full and complete bonus payment for this lease for the entire primary term of this lease. This is a paid-up lease and no delay rentals shall be due. The bonus paid hereunder is consideration for this lease and shall not be allocated as mere rental for a period.

Oil and Gas Lease between Hugney and R.E. Gas, 8/6/08, at 1-4; ***see also*** ***Cardinale***, 74 A.3d at 140.[4]

_____

[4] Within the ***Cardinale*** opinion, this Court directly quoted excerpts from Lucinda Cardinale's contracts and documents. However, we noted:

> [t]he Hugney/R.E. Gas documents are identical to the Cardinale/R.E. Gas documents with respect to the questions that this Court must address to dispose of on this appeal.

*(Footnote Continued Next Page)*

The **Cardinale** Court then held: "the language utilized in the lease agreement documents strongly indicates that the parties manifested an intent to be bound by the terms of the documents[;] that the terms of the documents were sufficiently definite[, and,] that consideration existed." **Cardinale**, 74 A.3d at 141. Further, we held that "[n]o language contained in the 'Order for Payment' alter[ed] [our] conclusion" that a valid contract between Hugney and R.E. Gas existed. **Id.** First, we cited to the following language in the Order for Payment:

> Lessee[, *i.e.*, R.E. Gas,] shall, subject to its inspection, approval of the surface, geology and title, make payment to Lessor[, *i.e.* Hugney,] as indicated herein by check within 60 banking days of Lessee's receipt of this Order For Payment and the executed Oil and Gas Lease associated herewith.

Hugney's Order for Payment, 8/6/08, at 1; **see also Cardinale**, 74 A.3d at 141.

_____

*(Footnote Continued)* ⸻⸻⸻⸻⸻⸻⸻

> Thus, our analysis of, and holding upon, the Cardinale/R.E. Gas documents applies with equal force to the Hugney/R.E. Gas documents.

**Cardinale**, 74 A.3d at 140 n.1.

In the case at bar, we have quoted the relevant portions of Hugney's documents with R.E. Gas. Further, "[t]he Hugney/R.E. Gas documents are identical to the Cardinale/R.E. Gas documents with respect to the questions that this Court must address to dispose of on this appeal." **See id.** As such, when quoting and analyzing this Court's prior opinion in **Cardinale**, we will utilize the language contained in Hugney's documents as opposed to the language contained in Cardinale's documents.

On appeal in *Cardinale*, the Defendants claimed that the above language "created a condition precedent to the formation of an agreement." *Cardinale*, 74 A.3d at 141. We disagreed with the Defendants and held:

> The conditional language in the "Order for Payment" does not directly relate to the existence of an agreement between R.E. Gas and [Hugney]. Rather, the language deals with R.E. Gas's duty of performance. R.E. Gas is required to perform by paying [Hugney] as indicated in the "Order for Payment," subject to the conditions stated therein. Consequently, this provision in the "Order for Payment" does not render the parties' lease agreements invalid.

*Id.* at 141-142.

Next, the *Cardinale* Court interpreted the language in the Order for Payment, which declared: "This Order for Payment expires one year from date of issuance, unless paid sooner, terminated or replaced by Lessee." Hugney's Order for Payment, 8/6/08, at 1; *see also Cardinale*, 74 A.3d at 142. On appeal, the Defendants argued that this language gave R.E. Gas "the discretion to terminate the leases at will." *Cardinale*, 74 A.3d at 142. We held that the Defendants were incorrect:

> This statement, at best, allows R.E. Gas to terminate the "Order for Payment." This statement does not allow R.E. Gas to terminate the parties' lease agreement or even R.E. Gas's duty to perform under the lease agreement. Moreover, there is nothing of record that suggests that R.E. Gas sought to terminate the "Order for Payment."

*Id.*

On June 19, 2013, we vacated the trial court's order and remanded the case for further proceedings.

- 14 -

While the Cardinale and Hugney appeal was pending before this Court, a substantially similar class action complaint was filed in the trial court, at docket number 2012-1099-CD, by "Mary R. Billotte, on behalf of herself and on behalf of all those similarly situated." Billotte Complaint, 7/18/12, at 1-16 and Attachments. The Billotte Complaint is, in all relevant respects, identical to the Cardinale and Hugney Complaint and the documents attached to the Billotte Complaint are "identical or substantially identical in all material respects [to Cardinale and Hugney's documents,] except for references to the identity of the lessor, the description of the leased premises and the amount of the prepaid rental or bonus that was to be paid." **See** Cardinale and Hugney Complaint, 10/25/11, at ¶ 15; **see also** Billotte Complaint, 7/18/12, at 1-16 and Attachments. Further, as was true with Cardinale and Hugney, Billotte sought to represent the following class:

> All persons who signed an oil and gas lease in 2008 with R.E. Gas Development, LLC, related to property located in Clearfield County, Pennsylvania, or elsewhere in Pennsylvania for which Western Land Services, Inc., acted as agent for or represented R.E. Gas Development, LLC, and for which R.E. Gas Development, LLC, did not pay amounts specified by the oil and gas leases or orders for payment, including the applicable pre-paid rental or "bonus" payments.

Billotte Complaint, 7/18/12, at ¶ 35.

On October 1, 2014, the trial court entered an order declaring that the Billotte Case and the Cardinale and Hugney Case were "consolidated for all purposes." Trial Court Order, 10/1/14, at 1.

On February 5, 2015, counsel for Appellants filed a "Motion to Substitute Class Representatives" at both docket numbers. The motion sought to "substitute class members Robert L. Henry and Elaine M. Henry [(hereinafter, collectively "the Henrys")] as representative plaintiffs in place of Lucinda Cardinale." Appellants' Motion to Substitute, 2/5/15, at 1. Further, within the motion, Appellants averred that the Henrys are class members and that Appellants sought to substitute the Henrys for Lucinda Cardinale because "Ms. Cardinale entered into a plea agreement on January 22, 2015, in a criminal matter." *Id.* at 2. Appellants further averred that Mary R. Billotte passed away on January 24, 2015 and that "counsel will consult with Ms. Billotte's personal representative about a substitution under Pa.R.Civ.P. 2351 *et seq.* after the personal representative is appointed." *Id.* at 2 n.1. The trial court, however, never ruled on Appellants' "Motion to Substitute Class Representatives" and Ms. Cardinale and Ms. Billotte remain as designated plaintiffs in the cases.

On March 6, 2015, Appellants filed a Motion for Class Certification at both docket numbers.[5] Within the motion, Appellants sought certification for the following class:

> All persons who signed an oil and gas lease in 2008 with
> R.E. Gas Development, LLC, related to property located in
> Clearfield County, Pennsylvania, or elsewhere in

---

[5] For purposes of brevity, we will refer to the two identical motions as a singular "motion."

> Pennsylvania (other than persons who signed a top lease) for which Western Land Services, Inc., acted as agent for or represented R.E. Gas Development, LLC, and for which R.E. Gas Development, LLC, did not pay amounts specified by the oil and gas leases or orders for payment, including the applicable pre-paid rental or "bonus" payments.

Appellants' Motion for Class Certification, 3/6/15, at 1-2.

Appellants claimed that all requirements for class certification were present because: 1) "there are 112 leases in dispute, affecting approximately 148 different individual landowners" (therefore, "the class is so numerous that joinder of all members is impracticable"); 2) R.E. Gas used standard form leases and other documents for all members of the class, the terms of the documents are materially identical, and the breach in every case was essentially identical (therefore, "there are questions of law or fact common to the class"); 3) the representative plaintiffs' claims are typical of the claims of the class; 4) the representative plaintiffs "will fairly and adequately assert and protect the interests of the class;" and, 5) "this class action provides a fair and efficient method for adjudicating the controversy." Appellants' Motion for Class Certification, 3/6/15, at 1-34.

The Defendants filed a response in opposition to the motion for class certification and argued that the trial court should deny Appellants' motion because individual questions of fact and law predominate across the proposed class and because the claims of the representative parties are not typical of the claims of the class. **See** The Defendants' Response, 4/20/15, at 1-54. With respect to the Defendants' claim that individual questions of law and fact predominated across the proposed class, the Defendants first

argued that, under the lease documents, "R.E. Gas had the right to condition its payment of prepaid rent on [R.E. Gas'] inspection under the lease and approval of the surface, geology and title to a parcel." *Id.* at 17 (internal emphasis omitted); *see also* Cardinale and Hugney Complaint, 10/25/11, at ¶ 51 (averring: "[R.E. Gas'] obligations under the Oil and Gas Leases were unconditional except that R.E. Gas had the right to condition its payment of prepaid rent on [R.E. Gas'] inspection under the lease and approval of the surface, geology and title to a parcel. [R.E. Gas], however, did not invoke or rely upon any such rights"). Therefore, the Defendants claimed, "[i]n order to determine whether the conditions precedent were satisfied [for R.E. Gas to pay the landowners the bonuses,] each proposed lease, as well as the conditions and circumstances surrounding it, must be individually analyzed to determine whether R.E. Gas approved the surface, geology, and title of each proposed lease and, therefore, whether each putative class member is entitled to the bonus payment." The Defendants' Response, 4/20/15, at 18 (some internal capitalization omitted).

Second, the Defendants claimed, "the evidence in this case demonstrates that R.E. Gas reviewed each proposed lease individually to decide whether to approve the surface, geology, and title and, therefore, establishes that individual questions predominate." *Id.* (some internal capitalization omitted). With respect to this claim, the Defendants cited to record exhibits, which declared that some leases were rejected because R.E. Gas did not approve an individual's purported title to the oil and gas

interests, some leases were rejected because R.E. Gas did not approve the geology of the land, and some leases were rejected because R.E. Gas did not approve the surface of the property. *Id.* at 19-26.

Further, the Defendants claimed that any argument that they "waived" or were estopped from relying upon the conditions precedent contained in the lease documents supported denying class certification, as waiver and estoppel inquiries are individual and fact-intensive. *Id.* at 29-30.

Finally, the Defendants claimed that the representative plaintiffs' claims were not typical of the putative class members. As the Defendants argued, "R.E. Gas rejected the proposed leases of [representative plaintiffs] Lucinda Cardinale and Iola Hugney because they both had significant title issues associated with their proposed leases." *Id.* at 37 n.24.

On June 19, 2015, the trial court held a hearing on Appellants' motion for class certification. During the hearing, the parties introduced, and the trial court accepted, certain documentary evidence and the parties then orally argued their respective positions. *See* N.T. Hearing, 6/19/15, at 10-11. As is relevant to the current appeal, during the hearing, Appellants introduced evidence demonstrating that the proposed class consisted of 112 leases. The evidence further demonstrated that, when calculated in calendar days from the date the leases were signed until the date R.E. Gas purportedly "rejected" the leases: R.E. Gas rejected **109 of the 112** leases (or, 97.3% of the leases) in an untimely manner; R.E. Gas rejected **one of the 112** leases in a timely manner, and there was no record evidence to

demonstrate when R.E. Gas rejected two of the 112 leases. **See** Plaintiffs' Exhibit 8, 6/19/15, at "Exhibit 67, Exhibit A." Moreover, when calculated in "banking days" from the date the leases were signed until the date R.E. Gas purportedly "rejected" the leases: R.E. Gas rejected **97 of the 112** leases (or, 86.6% of the leases) in an untimely manner; R.E. Gas rejected **13 of the 112** leases in a timely manner, and there was no record evidence to demonstrate when R.E. Gas rejected two of the 112 leases. **Id.**

On July 8, 2015, the trial court entered an order denying Appellants' motion for class certification. Trial Court Order, 7/8/15, at 1. Within the trial court's accompanying opinion, the trial court analyzed the case only insofar as was necessary to support its conclusion that, with respect to the breach of contract claim, Appellants failed to establish that "common questions of law or fact predominate over any question affecting only individual members." **See** Trial Court Opinion, 7/8/15, at 1-8; **see also** Pa.R.C.P. 1702(5) and Pa.R.C.P. 1708(a)(1); **but see** Pa.R.C.P. 1710 ("[i]n certifying, refusing to certify or revoking a certification of a class action, **the court shall set forth in an opinion accompanying the order the reasons for its decision on the matters specified in Rules 1702, 1708 and 1709, including findings of fact, conclusions of law and appropriate discussion**") (emphasis added). The trial court reasoned that individual questions of law and fact predominated in the breach of contract claim because:

To fully resolve the case, the finder of fact would have to analyze each individual property and the circumstances surrounding the Defendants' refusal to pay the bonus to determine if the Defendants breached each contract, or if the Defendants simply did not approve of the surface, title, or geology of each parcel of land according to the Order for Payment. A separate factual determination would have to be made for each lease which necessarily means that individual factual questions predominate. In this manner, proof as to one claimant would not necessarily be proof as to any other claimant, much less proof as to all other claimants. Therefore, the case is not proper for class certification. . . .

Trial Court Opinion, 7/8/15, at 8 (internal emphasis omitted).

Appellants[6] filed a timely notice of appeal at both docket numbers.

*See Kern v. Lehigh Valley Hosp., Inc.*, 108 A.3d 1281, 1283 n.2 (Pa.

---

[6] Appellants at both docket numbers include Robert L. Henry and Elaine M. Henry, who are two nonnamed members of the class described in the complaints. Nevertheless, as the Pennsylvania Supreme Court has held, nonnamed class members are parties to the action upon the filing of the class action complaint. According to the Supreme Court:

When an action is instituted by a named individual on behalf of himself and a class, the members of the class are more properly characterized as parties to the action. A subsequent order of a trial court allowing an action to proceed as a class action is not a joinder of the parties not yet in the action. The class is in the action until properly excluded.

*Bell v. Beneficial Consumer Discount Co.*, 348 A.2d 734, 736 (Pa. 1975); *see also Alessandro v. State Farm Mut. Auto. Ins. Co.*, 409 A.2d 347, 350 n.9 (Pa. 1979) ("[u]nlike a case where parties are joined, all members of a class action are 'parties plaintiff' upon the filing of the complaint. When the defendant successfully moves for decertification, the decertified parties are 'put out of court' as to the class action"); *Prince George Ctr., Inc. v. U.S. Gypsum Co.*, 704 A.2d 141, 145 (Pa. Super. 1997) ("[i]n Pennsylvania all class members are plaintiffs in the action upon
*(Footnote Continued Next Page)*

Super. 2015) ("an order refusing to certify a class is an appealable collateral order"); *see also* Pa.R.A.P. 313; *see also McGrogan v. First Commonwealth Bank*, 74 A.3d 1063, 1076 and 1079 (Pa. Super. 2013) ("an order denying class certification is usually appealable under the collateral order doctrine because . . . the order is separable from and collateral to the cause of action for liability, as the class certification issue is not concerned with the underlying merits of the action. . . . [Further, the

---
*(Footnote Continued)* ————————————

the filing of the complaint"); *but see Devlin v. Scardelletti*, 536 U.S. 1, 16 (2005) (Scalia, J., dissenting) ("[n]ot even petitioner . . . is willing to advance the novel and surely erroneous argument that a nonnamed class member is a party to the class-action litigation before the class is certified") (emphasis omitted); *Smith v. Bayer Corp.*, 564 U.S. 299, 313 (2011) ("[i]n general, a 'party' to litigation is one by or against whom a lawsuit is brought, or one who becomes a party by intervention, substitution, or third-party practice. And [the United States Supreme Court has] further held that an unnamed member of a certified class may be considered a 'party' for the particular purpose of appealing an adverse judgment. But as the dissent in *Devlin* noted, no one in that case was willing to advance the novel and surely erroneous argument that a nonnamed class member is a party to the class-action litigation before the class is certified. Still less does that argument make sense once certification is denied") (internal citations, corrections, and emphasis omitted) (some internal quotations omitted).

The Pennsylvania Supreme Court precedent, which defines nonnamed "class members" as "parties" to a class action even prior to class certification, binds us and, since the Defendants do not contest the Henrys' standing to appeal the orders denying class certification, we conclude that both appeals are properly before this Court. *See* Pa.R.A.P. 501 ("any party who is aggrieved by an appealable order . . . may appeal therefrom"); *In re Nomination Petition of de Young*, 903 A.2d 1164, 1168 (Pa. 2006) ("[the Pennsylvania Supreme Court] has consistently held that a court is prohibited from raising the issue of standing *sua sponte*").

order usually] involves a right too important to be denied review [and] presents a question that, if review is postponed until final judgment in the case, the claim will be irreparably lost") (internal quotations, citations, and corrections omitted). Appellants now raise the following claims to this Court:[7]

> [1.] Can individual questions predominate over common questions for class certification purposes where, for the vast majority of class members, [the Defendants] did not timely invoke any right to cancel the oil and gas lease based on defects in surface, geology or title of the land, thereby making [the Defendants'] obligation to pay absolute and any evidence of defects inadmissible?
>
> [2.] Do common questions predominate over individual questions where [the Defendants] presented evidence from which a jury could conclude that [the Defendants] rejected leases not on the basis of any contractual right but because [the Defendants] decided to change their business strategy and cut their leasing budget?
>
> [3.] Did this Court's earlier decision in *Cardinale v. R.E. Gas Development, LLC*, 74 A.3d 136 (Pa. Super. 2013), that the parties' oil and gas leases manifested an intention to form contracts and that the "subject to" language in the Order for Payment was not a condition to contract formation preclude the trial court from holding that the "subject to" language was a condition to contract formation?
>
> [4.] Did [the Defendants] "thoroughly rebut" Appellants' *prima facie* case for class certification where (a) [the Defendants] did not invoke any contractual right to cancel the oil and gas leases within the time permitted in the lease documents and (b) [the Defendants] could identify no

---

[7] For ease of discussion, we have renumbered Appellants' claims on appeal.

defect in surface, geology or title in rejecting the vast majority of the leases?

[5.] Where no individual questions existed for 89 of the 112 leases because [the Defendants] could identify no defect in surface, geology or title in rejecting those leases and all other class certification standards were satisfied, should the trial court have certified a class at least as to the lessors of those 89 leases?

Appellants' Brief at 4.

We have stated:

The lower court's determination regarding class certification is a mixed finding of law and fact entitled to appropriate deference upon appeal. . . . Trial courts are vested with broad discretion in determining definition of the class as based on commonality of the issues and the propriety of maintaining the action on behalf of the class. Accordingly, the lower court's order granting or denying class certification will not be disturbed on appeal unless the court neglected to consider the requirements of the rules or abused its discretion in applying them.

*Nye v. Erie Ins. Exch.*, 503 A.2d 954, 956 (Pa. Super. 1986) (internal quotations and citations omitted). "An abuse of discretion may not be found merely because an appellate court might have reached a different conclusion." *Ball v. Bayard Pump & Tank Co.*, 67 A.3d 759, 767 (Pa. 2013) (internal quotations and citations omitted). Instead, "[a]n abuse of discretion occurs only where the trial court has reached a conclusion that overrides or misapplies the law, or when the judgment exercised is manifestly unreasonable, or is the result of partiality, prejudice, bias or ill-will." *Id.*

First, Appellants claim that the trial court erred in denying their Motion for Class Certification. According to Appellants, the trial court erred when it concluded that class certification was inappropriate because common questions of law or fact did not predominate over individual questions. As Appellants argue, their class action revolves around the claim that the Defendants "did not timely invoke" their right to cancel the standard-form oil and gas leases. As such, Appellants claim, the Defendants' contractual obligation to pay the stated bonuses in the leases became "absolute" at the conclusion of the relevant time period and, thus, common questions of law and fact predominate in this class. We agree and thus vacate the trial court's order.

The Pennsylvania Supreme Court has explained:

> For the trial court, the question of whether a class should be certified entails a preliminary inquiry into the allegations of the putative class and its representative, whose purpose is to establish the identities of the parties to the class action. Pa.R.C.P. 1707 cmt. (certification process "is designed to decide who shall be the parties to the action and nothing more"). As a practical matter, the trial court will decide whether certification is proper based on the parties' allegations in the complaint and answer, on depositions or admissions supporting these allegations, and any testimony offered at the class certification hearing. The court may review the substantive elements of the case only to envision the form that a trial on those issues would take. . . . **Debbs v. Chrysler Corp.**, 810 A.2d 137, 154 (Pa. Super. 2002) (perceived adequacy of underlying merits of a claim should not factor into certification decision). Any consideration of merits issues at the class certification stage pertains only to that stage; the ultimate factfinder, whether judge or jury, must still reach its own determination on these issues at the liability stage. Even if the class is certified, before a

decision on the merits, the certification order may be revoked, altered or amended by the court on its own motion or on the motion of any party.

Pursuant to Pennsylvania's civil procedure rules, the trial court may allow a representative to sue on behalf of a class if, the class is numerous ("numerosity"); there are questions of law or fact common to the class ("commonality"); the claims of the representative are typical of the class ("typicality"); the representative will fairly and adequately protect the interests of the class ("adequate representation"); and a class action is a fair and efficient method for adjudicating the parties' controversy, under criteria set forth in Rule 1708. Pa.R.C.P. 1702. Among the Rule 1708 criteria for determining whether the class action is a fair and efficient method of adjudication is "whether [the] common questions of law or fact predominate over any question affecting only individual members" ("predominance"). Pa.R.C.P. 1708(a)(1) (also listing six factors in addition to predominance). The class "is in the action until properly excluded" by, *e.g.*, an order of court refusing certification or an order de-certifying the class. Pa.R.C.P. 1701(a) & cmt.; *Bell*, 348 A.2d at 736 (same).

During certification proceedings, the proponent of the class bears the burden to establish that the Rule 1702 prerequisites were met. The burden is not heavy at the preliminary stage of the case. Indeed, evidence supporting a *prima facie* case will suffice unless the class opponent comes forward with contrary evidence; if there is an actual conflict on an essential fact, the proponent bears the risk of non-persuasion. It is essential that the proponent of the class establish requisite underlying facts sufficient to persuade the court that the Rule 1702 prerequisites were met.

*Samuel-Bassett v. Kia Motors Am., Inc.*, 34 A.3d 1, 16 (Pa. 2011) (some internal citations and quotations omitted).

In this case, the trial court concluded that class certification was inappropriate solely because common questions of law or fact did not

predominate over individual questions with respect to the breach of contract claim. As the Supreme Court of Pennsylvania did in *Samuel-Bassett*, we will "address [the] commonality and predominance" requirements together. *Samuel-Bassett*, 34 A.3d at 22; *see also* Pa.R.C.P. 1702(2) (commonality); Pa.R.C.P. 1708(a)(1) (predominance). According to the *Samuel-Bassett* Court:

> To establish the commonality requirement, [the class proponent] had to identify common questions of law and fact – a common source of liability. Simply contending that all putative members of a class have a complaint is not sufficient if the complaints are disparate personal allegations arising from different circumstances and requiring different evidence, *i.e.*, one requiring less, the other requiring more, the one not indicative of the merits, the other appearing to approach the merits of individual cases. Commonality may not be established if various intervening and possibly superseding causes of damage exist. The critical inquiry for the certifying court is whether the material facts and issues of law are substantially the same for all class members. The court should be able to envision that the common issues could be tried such that proof as to one claimant would be proof as to all members of the class.
>
> [The class proponent is] not required to prove that the claims of all class members [are] identical; the existence of distinguishing individual facts is not "fatal" to certification. The common questions of fact and law merely must predominate over individual questions. Pa.R.C.P. 1708(a)(1). The standard for showing predominance is more demanding than that for showing commonality, but is not so strict as to vitiate Pennsylvania's policy favoring certification of class actions.
>
> The predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation. Thus, a class consisting of members for

- 27 -

whom **most** essential elements of its cause or causes of action may be proven through simultaneous class-wide evidence is better suited for class treatment than one consisting of individuals for whom resolution of such elements does not advance the interests of the entire class. See [*Liss & Marion, P.C. v. Recordex Acquisition Corp.*, 983 A.2d 652, 666 (Pa. 2009)] ("[c]lass members may assert a single common complaint even if they have not all suffered actual injury; demonstrating that all class members are subject to the same harm will suffice"); *Delaware County v. Mellon Fin. Corp.*, 914 A.2d 469, 475 (Pa. Cmwlth. 2007) (existence of separate questions "essential" to individual claims does not foreclose class certification); *Cook v. Highland Water & Sewer Auth.*, 530 A.2d 499, 505 (Pa. Cmwlth. 1987) ("[w]here a common source of liability can be clearly identified, varying amounts of damage among the plaintiffs will not preclude class certification. However, where there exist various intervening and possibly superseding causes of the damage, liability cannot be determined on a class-wide basis.").

*Samuel-Bassett*, 34 A.3d at 22-23 (some internal quotations, citations, corrections, and internal parentheticals omitted) (emphasis in original).

According to the trial court, "[t]o fully resolve the case, the finder of fact would have to analyze each individual property and the circumstances surrounding the Defendants' refusal to pay the bonus to determine if the Defendants breached each contract, or if the Defendants simply did not approve of the surface, title, or geology of each parcel of land according to the Order for Payment." Trial Court Opinion, 7/8/15, at 8. Respectfully, we conclude that the trial court's holding and reasoning are in error.

We have jurisdiction over this appeal by way of the collateral order doctrine. As such, this Court may not consider the merits of the claims or interpret the relevant contractual language contained in the documents.

*See Jacksonian v. Temple Univ. Health Sys. Found.*, 862 A.2d 1275, 1279 (Pa. Super. 2004) ("for a claim arising from a non-final order to be separable and collateral, the nature of the issue reviewed must be such that it can be addressed without the need to analyze the central issue of the case. An order is not separable if the matter being reviewed has the potential to resolve an issue in the case") (internal quotations and citations omitted). Nevertheless, we note that, during the class certification hearing, Appellants presented evidence which, they claim, show that: every member of the class entered into a standard-form oil and gas lease with R.E. Gas (or R.E. Gas' alleged agent and landman, Western Land Services, Inc.); under the terms of each lease, R.E. Gas was obligated to pay each member of the class a stated "bonus" following the expiration of a certain time period (usually 60 days) from the "execution of" the lease; under the terms of the lease and the Order for Payment, during the (normally) 60-day time period, R.E. Gas had a right to reject the lease based upon a good-faith determination that the title was uncertain or that the surface or geology was inappropriate; in all but three cases, R.E. Gas failed to reject the lease within the contractual time-frame; and, R.E. Gas' decision to reject each lease was based upon the Defendants' determination that they needed to cut costs, rather than upon a good faith determination that title, surface, or geology was inappropriate.

The Defendants contest a number of Appellants' arguments. However, the Defendants' arguments do not change the fact that Appellants' primary

class action claim for breach of contract revolves around the claim that R.E. Gas **failed to pay the class members the stated "bonus" within the specified time period and failed to reject the parties' agreements within the allowable deadline**. Under Appellants' interpretation of the lease documents, it matters not whether the Defendants' eventually-stated reason for "rejecting" the lease was based upon title, surface, or geology, when the rejection was untimely. This is because, Appellants claim, under the plain terms of the contractual documents, R.E. Gas' obligation to pay the "bonus" became absolute upon the expiration of the contractually-stated time period. Further, during the class certification hearing, Appellants presented evidence tending to show that R.E. Gas rejected 97% of the entire, 112-lease-proposed-class in an untimely manner. As such, under Appellants' theory of the case, for the vast majority of the proposed class, the fact-finder will not have to consider whether the title, surface, or geology was inappropriate for R.E. Gas, as R.E. Gas' duty to pay the bonus became "absolute" upon the expiration of the stated time-period.

Again, this Court may not consider the merits of Appellants' claims. However, we note that the fundamental questions in this case are common to all class members, including: whether a contract was formed between R.E. Gas and the class members; at what point was the contract between R.E. Gas and the class members "executed;" under the contractual documents, when did the time begin to run regarding R.E. Gas' obligation to pay the "bonus" to each class member; was R.E. Gas' obligation to pay the

bonus to each class member contingent upon its approval of title, surface, and geology; did R.E. Gas' obligation to pay the bonus to each class member become absolute at the expiration of the stated time, notwithstanding R.E. Gas' failure to inspect the title and property; and, whether the time for paying the stated bonus to each class member is to be calculated in "calendar days" or "banking days." As Chief Judge Joy Flowers Conti noted in a closely analogous case:

> Resolution of the foregoing questions will depend on an interpretation of certain key provisions in the form documents that are materially uniform and applicable to all transactions. The court will have to determine, in the first instance, whether the contractual provisions at issue are ambiguous in their meaning and, if so, what the legal consequences are. . . . [T]he determination of whether contractual language is ambiguous is a question of law for the court. If the agreements are found to be unambiguous, the court can declare their meaning as a matter of law. Moreover, if the court adopts plaintiffs' proposed construction of the agreement, plaintiffs will be able to establish liability on a classwide basis by virtue of nonpayment alone. Thus, plaintiffs' breach of contract theory can potentially be resolved by reference to, and interpretation of, common form documents. At the very least, common, classwide issues are present, the resolution of which will drive this litigation forward, toward either judgment or a possible settlement.

*Walney v. SWEPI LP*, 2015 WL 5333541, at *13 (W.D. Pa. 2015) (internal citations omitted).

Since the trial court's sole stated reason for denying class certification is erroneous, we conclude that the trial court abused its discretion in denying Appellants' Motion for Class Certification. We thus vacate the trial court's

order and remand so that the trial court may utilize its discretion and determine whether class certification is proper in this case, including whether the class definition is overly broad insofar as it may include individuals whose leases or orders for payment were rejected in a timely fashion.[8]

Orders vacated. Cases remanded. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/17/2017

---

[8] We have determined that the trial court erred in denying Appellants' motion for class certification and have vacated the trial court's order. Therefore, we will not review the remainder of Appellants' claims on appeal. To the extent Appellants claim that this Court should order that "all requirements for class certification are satisfied," we refuse Appellants' request, as the trial court failed to make the necessary "findings of fact, conclusions of law, and appropriate discussion" that are required under Rule 1710. **See** Pa.R.C.P. 1710 ("[i]n certifying, refusing to certify or revoking a certification of a class action, the court shall set forth in an opinion accompanying the order the reasons for its decision on the matters specified in Rules 1702, 1708 and 1709, including findings of fact, conclusions of law and appropriate discussion"). Therefore, this Court is not in a position to hold that class certification is or is not proper in this case.