J-A26036-19

2020 PA Super 90

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
|---|---|---|
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| CHARLES COOK | : | No. 424 WDA 2019 |

Appeal from the Order Entered March 7, 2019
In the Court of Common Pleas of Indiana County Criminal Division at
No(s): CP-32-CR-0000418-2017

BEFORE: SHOGAN, J., LAZARUS, J., and OLSON, J.

OPINION BY OLSON, J.: FILED APRIL 7, 2020

The Commonwealth of Pennsylvania appeals as of right, under Pennsylvania Rule of Appellate Procedure 311(d), from the order entered on March 7, 2019. Among other things, the pre-trial, March 7, 2019 order excluded from evidence a patient record and testimony regarding certain statements that Charles Cook ("Cook") made while he was involuntarily committed at a Minnesota mental health treatment center. We vacate in part and remand.

On December 13, 1991, the Pennsylvania State Police ("PSP") began investigating the murder of Myrtle Louise McGill. In October 2016, Cook was arrested for Ms. McGill's murder and, on May 30, 2017, the Commonwealth filed an information, which charged Cook with criminal homicide and robbery in relation to Ms. McGill's murder.[1]

_____

[1] 18 Pa.C.S.A. §§ 2501(a) and 3701(a)(1)(i), respectively.

In preparation for trial, the Commonwealth filed a motion in limine.  In relevant part, the Commonwealth's motion in limine requested that the trial court rule admissible, for trial, a patient record and testimony pertaining to certain statements Cook made while he was involuntarily committed at a mental health treatment center, named the Saint Peter Regional Treatment Center, located in Saint Peter, Minnesota.  Specifically, the Commonwealth's motion declared:

> 1. In 2016, [Cook] was involuntarily committed to the Saint Peter Regional Treatment Center in Saint Peter, Minnesota.
>
> 2. During [Cook's] involuntary commitment at the Saint Peter Regional Treatment Center, Mr. Jeffery R. Brunz [hereinafter "Security Counselor Brunz")] was a Security Counselor at the facility.
>
> 3. While [Cook] was committed to the facility, [Security Counselor Brunz] overheard comments made by [Cook].
>
> 4. The Commonwealth wishes to admit the mental health records of [Cook], specifically notes authored by [Security Counselor Brunz], with regard to the time period in which he was involuntarily committed to the Saint Peter Regional Treatment Center.
>
> 5. The Commonwealth [also] wishes to admit the testimony of [Security Counselor Brunz] about what he overheard or witnessed with regard to [Cook].

Commonwealth's Motion in Limine, 1/11/19, at 12.

Cook also filed a motion in limine, where he sought an order excluding all evidence related to what Security Counselor Brunz heard him say in the Saint Peter Regional Treatment Center.  See Cook's Motion in Limine, 1/11/19, at 1-2.  According to Cook, all such statements "are privileged under

42 Pa.C.S.A. § 5944, which governs confidential communications to psychiatrists or licensed psychiatrists, and are therefore shielded from discovery." Id. at 1.

On January 18, 2019, the trial court held a hearing on the motions in limine. During the hearing, the Commonwealth introduced the relevant record from the Saint Peter Regional Treatment Center that it wished to admit during trial. See N.T. Motion in Limine Hearing, 1/18/19, at 65-68. In pertinent part, the record declares:

Minnesota Department of Human Services
Direct Care and Treatment
Progress Notes

. . .

Patient Name: COOK, CHARLES . . . Episode: (. . .COMPETENCY
Birth Date: 8/31/1955                  RESTORATION PROGRAM)
Admit Date: 8/18/2016        Discharge Date: 12/12/[16]
Written By: Brunz, Jeffery R   Date of Note: 10/23/2016
Note Type: Security Counselor

                                          Date of Service: 10/23/[16]

Progress Note
107: Emotional State: At approximately 3:25 p.m. while in the library, writer over heard [Cook] talking to [Cook] #14945 about his past. [Cook] stated that he was living in Philadelphia and that he was on the run back in 1991. [Cook] stated "I killed some one" and went on to say "I was in a bar all fucked up." [Cook] then went on to talk about the soul, a lost spirit and that a body was moved. Writer heard [Cook] state something had happened back in 1995, but could not make out what [Cook] was talking about. [Cook] stated that it is "scary thinking about living the rest of your life in prison, it is like walking dead." [Cook] stated "never should have committed the crime." [Cook] then went on to say the system is more corrupt [than] the crime itself. [Cook] said "stab yourself in the artery and bleed out." [Cook] said that he was on his way to Pennsylvania when his van broke down. [Cook]

said "DNA might be there, but can't prove it." [Cook] stated that this has been on his mind. [Cook] stated he had to get out of that town, so he took off before they could put a hit on him. Writer also heard [Cook] say twice "joe's dead." Writer could only make out parts of the conversation as [Cook] was talking quietly. Will continue to monitor.

. . .

Practitioner: BRUNZ, JEFFERY R . . .

Electronically authenticated by: JEFFERY BRUNZ, Security Counselor on 10/23/2016 at 05:04 PM

Id. at Commonwealth's Exhibit 5.

At the time Cook made his statements, Cook was a patient of the Minnesota facility under an involuntary commitment order.[2] Id. at 72.

_____

[2] The Commonwealth obtained Cook's Minnesota mental health record pursuant to a valid Minnesota court order and in accordance with Minnesota Statutes Section 13.384. In relevant part, Minnesota Statutes Section 13.384, entitled "medical data," provides:

Subdivision 1. Definition. As used in this section:

. . .

(b) "Medical data" are data collected because an individual was or is a patient or client of a hospital, nursing home, medical center, clinic, health or nursing agency operated by a government entity including business and financial records, data provided by private health care facilities, and data provided by or about relatives of the individual.

. . .

Subd. 3. Classification of medical data. Unless the data is summary data or a statute specifically provides a different classification, medical data are private but are available only

_____

        to the subject of the data . . . and shall not be disclosed to others except:

            . . .

        (c) pursuant to a valid court order[.]

            . . .

M.S.A. § 13.384.

On February 12, 2019, the District Court for the County of Blue Earth, Minnesota issued an order, declaring:  "any claim of medical data privilege is overridden and [Security Counselor] Brunz shall comply with the orders from the County of Indiana, Commonwealth of Pennsylvania, subpoena for [Security Counselor] Brunz and such order is found authorized by Minn. Stat. § 13.384, subd. 3(c)."  In re:  the Matter of the Court of Common Pleas of the County of Indiana, Commonwealth of Pennsylvania, Subpoena for:  Jeffery R. Brunz, 07-CV-19-239 (Dist. Ct. Blue Earth Cty.), at 2 (some capitalization omitted).  Under this authority, the Commonwealth introduced both Cook's mental health record and Security Counselor Brunz's testimony during the motion in limine reconsideration hearing.  See N.T. Reconsideration Hearing, 3/4/19, at 4-5 and 9.

We note that, like Minnesota, Pennsylvania has a statute specifically dealing with the confidentiality of mental health records.  See 50 P.S. § 7111. However, Cook has never claimed that his record was privileged under Section 7111 and Cook has never claimed that this section of Pennsylvania's Mental Health Procedures Act ("MHPA") would or could apply to his case.  Indeed, at all times, Cook's sole and specific claim has been that his record and communications were privileged under 42 Pa.C.S.A. § 5944, which concerns confidential communications "between a psychologist or psychiatrist and his client."  See 42 Pa.C.S.A. § 5944; see also Cook's Motion in Limine, 1/11/19, at 1-2 (titled "Defendant's Motion in Limine Pursuant to 42 Pa.C.S. § 5944"); N.T. Motion in Limine Hearing, 1/18/19, at 62; Cook's Brief at 5-7. Regardless, since Cook's sole and specific claim of privilege has been under Section 5944, we do not consider whether Section 7111 could apply in this case.  See, e.g., Commonwealth v. Kauffman, 605 A.2d 1243, 1248 (Pa. Super. 1992) ("the privilege must be claimed, and a failure to claim the privilege waives it") (quotations and citations omitted).

On February 25, 2019, the trial court issued an order that, among other things, excluded from evidence the "record[] and testimony concerning statements made by [Cook] while a patient at St. Peter's Regional Treatment Center." Trial Court Order, 2/25/19, at 2 (some capitalization omitted).

On March 1, 2019, the Commonwealth filed a motion for reconsideration of the February 25, 2019 order. Within this motion, the Commonwealth claimed that Cook's statements were not confidential under 42 Pa.C.S.A. § 5944, as they "were made to a fellow patient and not to a psychologist, psychiatrist, or any agent of a psychologist or psychiatrist" and Security Counselor Brunz "simply overheard [Cook] talking to his fellow patient in a common area." Commonwealth's Motion for Reconsideration, 3/1/19, at 7. On March 1, 2019, the trial court expressly granted reconsideration of its February 25, 2019 order and scheduled a March 4, 2019 hearing on the reconsidered motions in limine. Trial Court Order, 3/1/19, at 1.

During the March 4, 2019 hearing, the trial court heard testimony from Security Counselor Brunz. Security Counselor Brunz testified that, in October 2016, he was "a security counselor with the Competency Restoration Program . . . at the Minnesota State Hospital." N.T. Reconsideration Hearing, 3/4/19,

_____

We further note that we flag this issue only in the interest of completeness. We, obviously, express no opinion on the merits of any such claim, especially given that Cook's Minnesota mental health record was disclosed to the Commonwealth pursuant to a valid Minnesota court order and in accordance with a Minnesota statute and given that the Minnesota hospital was certainly not governed by Pennsylvania's MHPA or Section 7111 of that act.

at 6. He testified that his job as a security counselor was "basically and primarily [as] a security guard." Id. Specifically, he testified, the job of a security counselor encompassed the following:

> [w]e ensure[d] the safety and security of the facility, primarily for all staff and the patients. We conducted regular rounds throughout our unit documenting what each patient was doing at the time of our rounds. We would count patients for their medications and meals, to attend their groups and for activities that they [chose] to attend. We would also make sure that they were taking their medications by doing mouth checks at the med window when they would come up. We would also be observing their actions and behaviors while they were on the unit and also when they would attend other activities and we would document accordingly.

Id. at 6-7.

As to the portion of his job where he "observed [the patients'] behavior," Security Counselor Brunz testified that this was done:

> [j]ust to maintain safety for everyone on the unit primarily. If there was any odd behaviors it could be related to, like, medical condition, whether it's a medical reaction or a psychological break. If we would notice any odd behaviors, we would let, like, the nurses know . . . and then the nurses would handle from there.

Id. at 7.

He further testified that, as a security counselor: he did not actually administer the medications, he just made sure the patients were not hiding the medications under their tongues or in their cheeks; he did not have any input into the types of medications the patients received; and, while he would be present during group meetings and group interactions, he was merely an observer and his primary role during this time was security. Id. at 8-9.

Security Counselor Brunz testified that he heard Cook's relevant statements in October 2016 while they were in the facility's library, where patients were permitted (but not required) to go. Id. at 12. He described the library in the following manner:

> the library was a large room off of the unit. Around the outer edge of the library was a bunch of shelves with books that the clients or patients could check in and out. In the center of the room on one end would be like a computer station where there was four to six computers that clients could use whether they wanted to play games or listen to music on it and then on the other side there would have been a couple couches, lounge chairs, coffee table if they chose to sit down and read or talk.

Id. at 10-11.

He testified that group therapy sessions were not held in the library and that no doctors or nurses were present in the library when Cook made his statements. Id. at 12 and 18.

As Security Counselor Brunz testified, Cook made his statements to another patient, while Cook and the other patient were sitting together on a couch. Id. at 14. At the time, Security Counselor Brunz was seated approximately six or seven feet away from the couch upon which Cook and the other patient were sitting and Cook was "aware that [Security Officer Brunz was] present when this conversation was happening." Id. at 14 and 17. Security Counselor Brunz testified that Cook's statements were made during the course of a private conversation between Cook and the other patient, and that Security Counselor Brunz was not a part of the conversation.

Id. at 14-15. Security Counselor Brunz also testified that the conversation between Cook and the other patient was at a "quiet" volume level. Id. at 16.

Security Counselor Brunz testified that, when he overheard Cook "talk about his background and possible criminal activity," Security Counselor Brunz began taking notes on a notepad. He testified that he began taking notes because:

> I felt like I needed to document it because we do encourage patients to keep their charges kind of to [themselves] so that other patients would not possibly retaliate against them. . . . Then we also document any odd behaviors or statements that we overhear and observe.

Id. at 15-16.

During cross-examination, Security Counselor Brunz testified that he made written progress notes and "charted on clients on behaviors and interactions throughout the day on a daily basis" and he did so because the written notes "would be then reviewed by [a] doctor and nurse to kind of get a whole picture of what was going on." Id. at 20. He testified that, as to this aspect of his job, he was "kind of the eyes and ears of the doctors and nurses." Id. Nevertheless, even as to the aspect of his job where he would make written progress notes, Security Counselor Brunz testified that this was done for "safety and security purposes." Id. at 21. He further testified that he did not "render opinions in [his] notes or anything like that[; he] just wr[ote] down [his] observations." Id.

On March 7, 2019, the trial court reaffirmed its earlier order, which (among other things) excluded from evidence the record and testimony

concerning the statements that Cook made while he was a patient at Saint Peter's Regional Treatment Center. Trial Court Order, 3/7/19, at 1. The Commonwealth filed a timely notice of appeal from the trial court's interlocutory order and, within the notice of appeal, the Commonwealth certified that the order terminated or substantially handicapped its prosecution of Cook. Commonwealth's Notice of Appeal, 3/11/19, at 1-2; see also Pa.R.A.P. 311(d).[3] The Commonwealth raises one claim on appeal:

> Whether the trial court erred as a matter of law and clearly abused its discretion when it denied [the Commonwealth's] motion in limine and motion for reconsideration with regard to the admissibility of evidence pertaining to statements made by [Cook] while a patient at the St. Peter Regional Treatment Center in Minnesota, where the statements were not made to an agent of a psychotherapist, not made in the course of treatment, and not covered by the privilege created under 42 Pa.C.S. § 5944[?]

Commonwealth's Brief at 9 (some capitalization omitted).

"When ruling on a trial court's decision to grant or deny a motion in limine, we apply an evidentiary abuse of discretion standard of review." Commonwealth v. Hutchison, 164 A.3d 494, 500 (Pa. Super. 2017) (quotations and citations omitted). "An abuse of discretion may not be found merely because an appellate court might have reached a different conclusion."

_____

[3] The Pennsylvania Supreme Court has held "that the Commonwealth may appeal a pre-trial ruling on a motion in limine which excludes Commonwealth evidence in the same manner that it may appeal an adverse ruling on a suppression motion – i.e., by certification that the order has the effect of terminating or substantially handicapping the prosecution." Commonwealth v. Boczkowski, 846 A.2d 75, 87 (Pa. 2004).

Cardinale v. R.E. Gas Dev., LLC, 154 A.3d 1275, 1286 (Pa. Super. 2017) (quotations and citations omitted). "Instead, an abuse of discretion occurs only where the trial court has reached a conclusion that overrides or misapplies the law, or when the judgment exercised is manifestly unreasonable, or is the result of partiality, prejudice, bias or ill-will." Id. (quotations, citations, and corrections omitted). Further, to the extent we are required to review the trial court's conclusions of law, "our standard of review is de novo and our scope of review is plenary." Commonwealth v. Wilmer, 194 A.3d 564, 567 (Pa. 2018).

The issue on appeal concerns the applicability of an evidentiary privilege. We have held: "[if] the party asserting a privilege shows that the privilege is properly invoked, the burden shifts to the party seeking the disclosure to show that disclosure of the information will not violate the accorded privilege." In re Subpoena No. 22, 709 A.2d 385, 388 (Pa. Super. 1998).

At the trial level, Cook asserted that his mental health record and the communications contained therein were privileged under 42 Pa.C.S.A. § 5944. The Commonwealth countered that Section 5944 did not preclude the admission of either the record or testimony concerning the statements at issue because: the statements were made to one of Cook's fellow patients, and not to a psychotherapist or an agent of the psychotherapist; the statements were not made during the course of treatment; and, Security Counselor Brunz was

merely a security officer and "was not engaged in the treatment of [Cook]." See Commonwealth's Motion for Reconsideration, 3/1/19, at 1-9.

The trial court agreed with Cook and held that "the patient note written by [Security Counselor] Brunz and any testimony regarding its contents" were privileged under Section 5944. See Trial Court Opinion, 4/15/19, at 5. The trial court reasoned:

> while [Security Counselor] Brunz was not a medical professional who was directly treating [Cook], it is clear that his role at the facility extended beyond that of a security guard. Although he may not have made treatment decisions, he certainly had the ability to influence them via the progress notes he entered about his observations. [Security Counselor] Brunz's notes were entered into the same electronic system where medical personnel also entered notes and those administering treatment would review them. Furthermore, not only did [Security Counselor] Brunz make and record observations about the patients' behavior, he attended the group meetings that were facilitated by medical personnel. The [trial] court found that [Security Counselor] Brunz was not merely a casual observer of events for safety reasons, but rose to the level of an agent by creating records that would ultimately be consulted in the treatment of patients.
>
> Based on the scope of [Security Counselor] Brunz's job requirements and his level of involvement with patients, it would be reasonable for a patient such as [Cook] to expect that communications in his presence would remain confidential. It also stands to reason that the expectation would be heightened by the fact that [Cook] was involuntarily committed to the facility and subject to observation at virtually all times.

Id. at 4-5 (some capitalization omitted).

On appeal, the Commonwealth claims that the trial court erred in concluding that the psychotherapist-client privilege applies to this case

because: 1) Security Counselor Brunz was not a psychotherapist or an agent of a psychotherapist; 2) Cook's statements were not made in the course of treatment; and, 3) Cook's statements were made to, and in the presence of, a third party. See Commonwealth's Brief at 22. We agree that the trial court erred when it excluded from evidence the record and the testimony regarding Cook's statements.

42 Pa.C.S.A. § 5944 states:

> § 5944. Confidential communications to psychiatrists or licensed psychologists
>
> No psychiatrist or person who has been licensed . . . to practice psychology shall be, without the written consent of his client, examined in any civil or criminal matter as to any information acquired in the course of his professional services in behalf of such client. The confidential relations and communications between a psychologist or psychiatrist and his client shall be on the same basis as those provided or prescribed by law between an attorney and client.

42 Pa.C.S.A. § 5944.

In accordance with the plain language of Section 5944, we have held that, "[w]hen interpreting the psychotherapist-client statutory privilege, we are guided by the same principles that apply to the attorney-client privilege." In re Subpoena No. 22, 709 A.2d at 388. Further, in analyzing the scope of this privilege, "we must be mindful that evidentiary privileges are not favored." Commonwealth v. Stewart, 690 A.2d 195, 197 (Pa. 1997). The Pennsylvania Supreme Court explained:

> Exceptions to the demand for every man's evidence are not lightly created nor expansively construed, for they are in

derogation of the search for truth. Thus, courts should accept testimonial privileges only to the very limited extent that permitting a refusal to testify or excluding relevant evidence has a public good transcending the normally predominant principle of utilizing all rational means for ascertaining the truth.

Id. (quotations and citations omitted).

This Court has explained the purpose of the psychotherapist-client privilege:

> The privilege afforded by § 5944 was intended to inspire confidence in the client and to encourage full disclosure to the psychologist and psychiatrist. By preventing the [psychotherapist] from making public any information which would result in humiliation, embarrassment or disgrace to the client, the privilege is designed to promote effective treatment and to insulate the client's private thoughts from public disclosure.

Commonwealth v. Fewell, 654 A.2d 1109, 1112-1113 (Pa. Super. 1995) (corrections omitted); see also Gormley v. Edgar, 995 A.2d 1197, 1204 (Pa. Super. 2010) ("[t]he [psychotherapist-client] privilege is based upon a strong public policy designed to encourage and promote effective treatment and to insulate the client's private thoughts from public disclosure").

Given the purpose behind the psychotherapist-client privilege and, in keeping with the relatively tight construction we provide to evidentiary privileges, we have held:

> [Section 5944] acts to bar testimony by the treating psychologist or psychiatrist, as well as the disclosure of certain records. While documents prepared during the course of treatment may sometimes fall within the privilege, Section 5944 pertains only to confidential communications between psychiatrists or psychologists and their patients/clients that were made in the course of

treatment, not to all records and documents regarding mental health treatment. This Court has previously held that the privilege codified in Section 5944 does not extend to reports or other documents that do not contain any communications made by [the] patient to the psychotherapist. In evaluating whether the privilege should apply to certain statements, courts must look to the purpose and circumstances under which the declarant made them.

Commonwealth v. Pukowsky, 147 A.3d 1229, 1235-1236 (Pa. Super. 2016) (quotations and citations omitted) (emphasis added); see also Gates v. Gates, 967 A.2d 1024, 1029 (Pa. Super. 2009) ("the provisions of [Section] 5944 relate only to confidential communications with psychiatrists or psychologists that were made in the course of treatment").

As the trial court recognized, in Commonwealth v. Simmons, this Court extended the psychotherapist-client privilege to "members of the [psychotherapist's] treatment team." Commonwealth v. Simmons, 719 A.2d 336, 343 (Pa. Super. 1998).[4] However, the Simmons Court continued to hold that – to be privileged – any statement must be made by the client "in confidence" to a member of the treatment team and "in the course of facilitating the treatment plan." Id. at 343. The Simmons Court reasoned:

the § 5944 privilege sets forth that "The confidential relations and communications between a psychologist and his client shall be on the same basis as those provided or prescribed by law between an attorney and a client." [42 Pa.C.S.A. § 5944.] In determining whether a communication by a

_____

[4] Simmons was an extension of this Court's 1991 opinion in Kalenevitch v. Finger, which held that "communications made to the agent of a licensed psychologist or psychiatrist are privileged by 42 Pa.C.S.A. § 5944." Kalenevitch v. Finger, 595 A.2d 1224, 1228 (Pa. Super. 1991).

client to someone other than his attorney is covered by the attorney-client privilege, courts have held that as long as the recipient of the information is an agent of the attorney and the statement is made in confidence for the purpose of facilitating legal advice, it is privileged. Commonwealth v. Noll, 662 A.2d 1123, 1126 (Pa. Super. 1995) (confidential statement to accident reconstructionist hired by attorney to determine whether the client should sue is privileged); Commonwealth v. Mrozek, 657 A.2d 997, 999-1000 (Pa. Super. 1995) (inculpatory statement to attorney's secretary made while defendant was seeking to retain attorney for legal representation and advice is privileged); Commonwealth v. Hutchinson, 434 A.2d 740, 744-745 (Pa. Super. 1981) (inculpatory statement made to investigator for public defender's office is privileged). In the attorney-client context, the job description of the recipient of a confidential communication or their lack of legal training is irrelevant so long as the recipient is an agent of an attorney and the statement is made in confidence for the purpose of obtaining or facilitating legal advice. We find that this reasoning should apply with equal force to members of the [psychotherapist's] treatment team in conversations with [the client] in the course of facilitating the treatment plan.

. . .

Thus, the mere fact that the other members of the treatment team were not themselves psychologists does not defeat the privilege should it otherwise apply. [The client] is entitled to protection in [his] confidential communications to members of the team. . . . [Simply stated,] the § 5944 privilege protects any confidential statements made by [the client] to any member of the treatment team during the course of private interviews conducted for purposes of review and evaluation of the treatment plan.

Simmons, 719 A.2d at 343-344 (footnotes omitted).

In the case at bar, Cook made his statements in a private conversation to a fellow patient, during recreational time in a library, and outside of any therapy session. The fellow patient was not a member of Cook's treatment

team, Cook's statements to this patient were not "confidential" communications between Cook and a member of his treatment team, and Cook's statements were not made "in the course of treatment." Instead, Cook's statements were made during a private conversation between Cook and a third-party, which were overheard by Security Counselor Brunz and then recorded, by Security Counselor Brunz, in his notes.

Put simply, since Cook did not make his statements to a member of his treatment team, since Cook's statements were not confidential, and since Cook's statements were not made "in the course of treatment," Cook's statements are not protected under the psychotherapist-client privilege. As such, we respectfully vacate the portion of the trial court's March 7, 2019 order that excluded from evidence the patient record and testimony concerning the statements Cook made while he was a patient at Saint Peter's Regional Treatment Center.[5]

Order vacated in part. Case remanded. Jurisdiction relinquished.

_____

[5] The trial court's March 7, 2019 order also reaffirmed the portion of its earlier order, which granted in part and denied in part "the Commonwealth's motion in limine seeking to admit evidence relating to [Cook's] arrest on December 10, 1991." See Trial Court Order, 3/7/19, at 1; Trial Court Order, 2/25/19, at 1 (some capitalization omitted). The Commonwealth did not appeal this portion of the March 7, 2019 order and, thus, our disposition does not effect this portion of the order.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date:  4/7/2020