J-S35013-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| CARL VERNON CLARK | : | |
| | : | |
| Appellant | : | No. 623 MDA 2021 |

Appeal from the Judgment of Sentence Entered April 28, 2021
In the Court of Common Pleas of Berks County Criminal Division at
No(s): CP-06-CR-0001654-2020

BEFORE:   OLSON, J., KUNSELMAN, J., and PELLEGRINI, J.[*]

MEMORANDUM BY OLSON, J.:                **FILED: JANUARY 11, 2022**

Appellant, Carl Vernon Clark, appeals from the judgment of sentence entered on April 28, 2021, as made final by the denial of Appellant's post-sentence motion on May 11, 2021.  We affirm.

The trial court ably summarized the underlying facts of this case:

> In September [] 2019, Kelly Yeakley ("Yeakley") was residing at an apartment located at 24 North 3rd Street, Womelsdorf, Pennsylvania.  There were five or six apartments in the apartment complex.  There were other individuals residing in those apartments.
>
> On September 24, 2019, [Yeakley's ex-girlfriend,] Karen Laskoskie ("Laskoskie")[,] drove to Yeakley's apartment to take him to get shelves.  . . . While at the apartment, Yeakley got into an argument with Laskoskie . . . over his plan to purchase dresser drawers for his clothing.  [Appellant] was present at Yeakley's apartment during the argument.  . . .

_____

[*] Retired Senior Judge assigned to the Superior Court.

[Appellant] helped Yeakley load a lawnmower into Laskoskie's vehicle. After the lawnmower was loaded into Laskoskie's vehicle, Yeakley went into his apartment to retrieve his wallet [and] keys and to lock the door. When Yeakley came back outside, he observed that [Appellant] was seated in the front passenger seat of Laskoskie's vehicle. Yeakley felt disrespected by Laskoskie because [Appellant] had taken his seat. He yelled at Laskoskie and she drove away. Yeakley tried to remove the lawnmower from Laskoskie's vehicle as he chased after Laskoskie and [Appellant].

Yeakley called Laskoskie later that day and she informed Yeakley that she told [Appellant] to put the lawnmower outside so Yeakley could get it. Yeakley called [Appellant] and asked him what he was doing. In response, [Appellant] stated that he was "doing" his girlfriend. Yeakley believed that [Appellant] meant he was having sex with Laskoskie. Yeakley "flipped out" on [Appellant] and said, "Don't you ever come here again." After the phone call, Yeakley remained in his apartment for a period of time before going to the supermarket and [convenience store].

During the time that Yeakley was away from his apartment, [Appellant] visited the Womelsdorf Fire Department Social Quarters. He arrived at 7:50 p.m. While he was there, he had a beer and was given a book of matches. [Appellant's] stay at the social quarters was shorter than normal. The sirens from the fire department went off approximately [ten] to 20 minutes after [Appellant] left the Womelsdorf Fire Department Social Quarters.

While Yeakley was gone, another resident of the apartment complex, Stephanie Irizarry ("Irizarry"), discovered that Yeakley's apartment was on fire. When Irizarry opened the screen door to Yeakley's apartment, she observed a glass jar sitting on the ground in an upright position with a burning sock or rag located in the corner of the door frame. She contacted 911 after unsuccessfully attempting to put out the fire. When Yeakley returned home, he saw firetrucks outside of his apartment and that his apartment had been lit on fire.

Law enforcement officers responded to Yeakley's apartment to determine the fire's origin and cause. A canine, trained to

- 2 -

detect ignitable liquids, was deployed and alerted to the presence of an ignitable liquid at the threshold of the door to Yeakley's apartment as well as the door itself. The remains of a glass mason jar were located near the door frame of Yeakley's apartment. Based on their observations, law enforcement determined that the fire was set intentionally with an open flame introduced by a human hand to a combustible item, a Molotov cocktail, in the area of the door frame on the sill between the storm door and the main door used to enter Yeakley's apartment. The term Molotov cocktail was defined at trial as "a device determined for ignitable liquid inside a breakable container with some sort of wick-like object expanding from it which allows to ignite the wick-like object." There was no evidence present to suggest that the fire was caused by accident. Debris was collected from the scene of the fire and a laboratory test of that debris tested positive for the presence of gasoline on the jar and part of the door to Yeakley's apartment. The fire caused approximately $43,000.00 in damage.

On September 27, 2019, Trooper Janssen Herb ("Trooper Herb") from the Pennsylvania State Police traveled to [Appellant's] residence [] in Womelsdorf to execute a search warrant. While at [Appellant's] residence, Trooper Herb investigated a shed on [Appellant's] property which contained rags, socks and a small container of liquid which smelled like gasoline. He also discovered two mason jar style glass containers in [Appellant's] kitchen.

Trooper Herb was able to locate surveillance footage to assist in his investigation into the fire at Yeakley's apartment. There were cameras on a garage one block over from Yeakley's apartment that captured [Appellant] on video. Video footage from the social quarters showed [Appellant] arriving at 7:50 p.m. He was wearing a light-colored blue-gray shirt, shorts and white sneakers. [Appellant] left the social quarters around 8:52 p.m. or 8:53 p.m. He did not return at any point later that evening. . . .

At 9:04 p.m., [Appellant] can be seen in the video surveillance from the garage near Yeakley's apartment walking away from the social quarters. He was wearing the same clothes as he was wearing while at the social quarters and had nothing in his hands. [Appellant] was walking in the

direction towards his house. [Appellant] left the view of the garage camera at 9:05 p.m. At 9:06 p.m., [Appellant] came back into view of the camera carrying a plastic bag in his hands walking towards Yeakley's apartment door. At 9:07 p.m., [Appellant] went out of view from the camera and was about 20 to 30 feet away from the door to Yeakley's apartment. The reflection of light from the flames of a fire were visible on video approximately 30 seconds after [Appellant] left the view of the camera. The call to 911 was made at 9:10 p.m. [Appellant] had been out of view of the camera for three minutes when the 911 call was placed.

Trial Court Opinion, 7/22/21, at 2-5 (citations omitted).

A jury found Appellant guilty of arson, possessing explosive or incendiary materials or devices, criminal mischief, possessing incendiary devices, and possessing instruments of crime;[1] the trial court found Appellant guilty of criminal trespass.[2] On April 28, 2021, the trial court sentenced Appellant to serve an aggregate term of 20 months to four years in prison for his convictions.

Following the denial of Appellant's post-sentence motion, Appellant filed a timely notice of appeal. Appellant raises three claims on appeal:

> [1.] Whether the trial court erred in denying Appellant's motion *in limine* to exclude irrelevant and prejudicial photographs taken at Appellant's home during the execution of a search warrant, as they depicted extremely common household items that the Commonwealth's own witness admitted had nothing to do with the alleged crime?

---

[1] 18 Pa.C.S.A. §§ 3301(a)(1)(ii), 3301(f), 3304(a)(1), 7306(a), and 907(a), respectively.

[2] 18 Pa.C.S.A. § 3503(b.1)(ii).

[2.] Whether the facts on record were legally insufficient to support an inference beyond a reasonable doubt that Appellant had committed arson, criminal mischief, incendiary devices, possessing instruments of a crime, or criminal trespass: where, *inter alia*, Appellant was never seen to enter or touch the property in question; there was no evidence at all that the bag he was seen on video to be carrying contained any incendiary device; and no fingerprints or DNA were found at the scene to connect a hatless and gloveless Appellant to the crime?

[3.] Whether Appellant's conviction must be reversed for lack of evidentiary weight in support thereof, where, *inter alia*, the Commonwealth failed to establish any remotely plausible motive on Appellant's part for committing such a crime; Appellant was observed, moments before the fire, to be acting normally, to be unperturbed and sociable – whereas the [] victim was the one who was observed that afternoon to be angry and intoxicated.

Appellant's Brief at 7-8 (some capitalization omitted).[3]

First, Appellant claims that the trial court erred when it denied his motion *in limine*. This Court has held:

When ruling on a trial court's decision to grant or deny a motion *in limine*, we apply an evidentiary abuse of discretion standard of review. An abuse of discretion may not be found merely because an appellate court might have reached a different conclusion. Instead, an abuse of discretion occurs only where the trial court has reached a conclusion that overrides or misapplies the law, or when the judgment exercised is manifestly unreasonable, or is the result of partiality, prejudice, bias or ill-will. Further, to the extent we are required to review the trial court's conclusions of law, our standard of review is *de novo* and our scope of review is plenary.

---

[3] For ease of discussion, we have re-numbered Appellant's claims on appeal.

*Commonwealth v. Cook*, 231 A.3d 913, 919 (Pa. Super. 2020) (citations and quotation marks omitted).

Prior to trial, Appellant filed a motion *in limine*, where he sought to exclude "[t]he admission of any [photographs taken] at the time the search warrant was executed at" Appellant's residence. Appellant's Motion *in Limine*, 3/17/21, at 1. The photographs included depictions of mason jars found in Appellant's home and cloth and a gasoline can found in a shed at the rear of Appellant's property. **See** N.T. Hearing, 3/31/21, at 7. According to Appellant, since none of the items were taken as evidence, "[a]ny pictures that would be shown would be prejudicial as the items photographed were not considered as any form of evidence for collection and thus are not relevant." Appellant's Motion *in Limine*, 3/17/21, at 1.

The trial court denied Appellant's motion and the Commonwealth introduced the photographs during trial. Now on appeal, Appellant claims that the trial court's ruling constituted prejudicial error because the photographs depicted "common, everyday" items that were not used to start a fire, but were introduced in such a way that showed Appellant possessed items "that together might theoretically be used to start a fire . . . as just about every adult in the country can be found to have." Appellant's Brief at 28. Appellant's claim fails.

"Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Pa.R.E. 401. "Evidence that is not

- 6 -

relevant is not admissible." Pa.R.E. 402. Further, even if evidence is relevant, "[t]he court may exclude relevant evidence if its probative value is outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Pa.R.E. 403.

In this case, the Commonwealth theorized that Appellant retrieved, from his home, a mason jar, gasoline, a rag or a sock, and a lighter or matches. According to the Commonwealth, Appellant created a Molotov cocktail from these items and, after Appellant left the social hall, Appellant placed the Molotov cocktail in front of Yeakley's apartment door and lit the device, thus causing the fire. *See*, *e.g.*, N.T. Trial, 4/1/21, at 203-204. The photographs that Appellant sought to exclude depicted: a mason jar that was found in Appellant's home; rags found in Appellant's shed; and, a gasoline container, found in Appellant's shed, which was "filled to approximately half[] way . . . [and smelled] of gasoline." *See id.* at 125-126.

The photographs Appellant sought to exclude were highly relevant to the Commonwealth's case, as they demonstrated that Appellant possessed similar items to those which were used to start the fire. Therefore, the trial court acted within its discretion when it denied Appellant's motion *in limine*. Appellant's claim on appeal thus fails.

Next, Appellant claims that the evidence was insufficient to support his convictions. We review Appellant's sufficiency of the evidence challenge under the following standard:

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for [that of] the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

***Commonwealth v. Callen***, 198 A.3d 1149, 1167 (Pa. Super. 2018) (citations and quotation marks omitted).

According to Appellant, the evidence was insufficient to support his convictions because: "Appellant was never seen to venture up to the door in question;" "there was no way to divine the contents of the bag [Appellant] was [seen] carrying;" "neither his DNA nor his fingerprints were found anywhere at the scene;" "[t]here was no discernible motive for him to start the fire;" and, the investigators "did not even bother to interview any of the other tenants of the residence in question." Appellant's Brief at 22-27. Appellant claims that the only evidence supporting his convictions is camera

footage showing that he was near the scene of the fire at the time the fire was started. *Id.* at 22.

Appellant's sufficiency claim fails. As the trial court thoroughly explained, the Commonwealth presented sufficient evidence to sustain Appellant's convictions:

> Prior to the arson, [Appellant] was seen at the Womelsdorf Fire Department Social Quarters where he obtained a book of matches. He stayed for an unusually brief amount of time before he departed. The fire department's sirens were activated [ten] to 20 minutes after [Appellant] left. Video surveillance cameras not only placed [Appellant] near Yeakley's apartment when the fire was started, but also showed that [Appellant] was in possession of a plastic bag as he walked towards Yeakley's apartment. When [Appellant] went out of view of the camera, he was near Yeakley's apartment door.
>
> . . .
>
> [Specifically, Appellant] was seen on camera at 9:04 p.m. walking away from the social quarters in the direction of his house. He left the view of the camera at 9:05 p.m. only to return again at 9:06 p.m. carrying a plastic bag and heading towards Yeakley's apartment. When [Appellant] left the view of the camera, he was 20 to 30 feet from Yeakley's apartment door. . . .
>
> The reflection of flames from a fire was visible 30 seconds later. Additionally, the 911 call was placed three minutes after [Appellant] left the camera's view. Both Irizarry's testimony and the investigation from law enforcement established that a Molotov cocktail was used to start the fire at Yeakley's apartment. The Molotov cocktail consisted of a glass mason jar with a sock or rag in it. Trooper Herb located glass mason jars, socks and rags on [Appellant's] property when he executed the search warrant. Additionally, a laboratory test performed on the remains of the glass mason jar and door at Yeakley's apartment revealed the presence of

gasoline. Trooper Herb located a container of gasoline on [Appellant's] property.

The jury heard that [Appellant's] property contained all of the items necessary to create the Molotov cocktail found at Yeakley's apartment. [Appellant] was in the area when the fire was started and video footage showed that the reflection of flames could be seen 30 seconds after [Appellant] left the view of the camera. The 911 call was made a few minutes later. Based on all of the above information, when viewing the evidence in the light most favorable to the Commonwealth as the verdict winner and drawing all proper inferences favorable to the Commonwealth, the jury could have determined that all of the elements of the crimes had been established beyond a reasonable doubt. [Appellant] is not entitled to relief.

Trial Court Opinion, 7/22/21, at 11-14.

We agree with the trial court's thorough analysis and conclude that Appellant's sufficiency of the evidence claim fails.

Finally, Appellant claims that the jury's verdict was against the weight of the evidence. As our Supreme Court has explained:

A motion for a new trial based on a claim that the verdict is against the weight of the evidence is addressed to the discretion of the trial court. A new trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion. Rather, the role of the trial judge is to determine that notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice. It has often been stated that a new trial should be awarded when the [factfinder's] verdict is so contrary to the evidence as to shock one's sense of justice and the award of a new trial is imperative so that right may be given another opportunity to prevail.

- 10 -

An appellate court's standard of review when presented with a weight of the evidence claim is distinct from the standard of review applied by the trial court:

Appellate review of a weight claim is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence. Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence. One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice.

This does not mean that the exercise of discretion by the trial court in granting or denying a motion for a new trial based on a challenge to the weight of the evidence is unfettered. In describing the limits of a trial court's discretion, [the Pennsylvania Supreme Court has] explained:

The term discretion imports the exercise of judgment, wisdom and skill so as to reach a dispassionate conclusion within the framework of the law, and is not exercised for the purpose of giving effect to the will of the judge. Discretion must be exercised on the foundation of reason, as opposed to prejudice, personal motivations, caprice or arbitrary actions. Discretion is abused where the course pursued represents not merely an error of judgment, but where the judgment is manifestly unreasonable or where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias or ill-will.

***Commonwealth v. Clay***, 619 Pa. 423, 64 A.3d 1049, 1055 (2013) (citations, quotations, and emphasis omitted).

Appellant claims that the jury's verdict is against the weight of the evidence, as "[t]he Commonwealth [did] not establish any motive on Appellant's part to commit arson." Appellant's Brief at 32.

Appellant's claim fails. Motive is not an element of any of the offenses for which Appellant was convicted. *See Commonwealth v. Keaton*, 729 A.2d 529, 536 (Pa. 1999) ("it is axiomatic that the Commonwealth is not required to prove motive to establish guilt even where the crime charged is murder of the first degree") (citations and quotation marks omitted). Further, as the trial court explained: "[t]he jury determined the credibility of [the] witnesses and, when assessing the weight of the evidence, believed the evidence presented by the [Commonwealth] and rendered a guilty verdict. [The] verdict was consistent with the evidence presented and did not shock anyone's sense of justice." Trial Court Opinion, 7/22/21, at 15. We agree and conclude that the trial court did not abuse its discretion when it denied Appellant's weight of the evidence claim.

Judgment of sentence affirmed. Jurisdiction relinquished.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 1/11/2022

- 12 -