J-A27036-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA  :  IN THE SUPERIOR COURT OF
:  PENNSYLVANIA
Appellant  :
:
:
:
v.  :
:
:
:
JAMES PAUL WINSLOW  :  No. 226 MDA 2024

Appeal from the Order Entered February 5, 2024
In the Court of Common Pleas of Clinton County Criminal Division at
No(s):  CP-18-CR-0000118-2023

BEFORE:  LAZARUS, P.J., KUNSELMAN, J., and McLAUGHLIN, J.

MEMORANDUM BY McLAUGHLIN, J.:  **FILED APRIL 15, 2025**

The Commonwealth appeals from the order granting James Paul Winslow's motion *in limine* and denying the Commonwealth's motion *in limine*. We affirm.

The Commonwealth charged Winslow with unlawful contact with a minor, attempted indecent assault, attempted corruption of minors, indecent exposure, and criminal use of a communication facility.[1] These charges stem from an allegation by Winslow's niece that in February 2022, Winslow entered her bedroom, began to masturbate, and asked her to help him by touching his penis with her feet. Winslow's niece was 15 years old at the time. Winslow also allegedly showed her pornography on his phone during the incident. The

---

[1] 18 Pa.C.S.A. §§ 6318(a)(1), 901(a) (of 3126(a)(8)), 901(a) of 6301(a)(1)(ii)), 3127(a), and 7512(a), respectively.

minor lived in the home with Winslow, her father, and her father's girlfriend, Ashley Rote. The minor's father and Winslow are brothers.

The Commonwealth and Winslow filed motions *in limine*. Winslow moved to preclude the Commonwealth from referring to Winslow's niece as a "victim." Defendant, James P. Winslow's Motions *in Limine*, filed 1/16/24, at ¶¶ 5-15 (unpaginated).

In its motion, the Commonwealth sought to admit evidence under Rule 404(b) of the Pennsylvania Rules of Evidence "concerning the alleged foot fetish and pornography use of [Winslow]." Commonwealth's Pre-Trial Motions, filed 1/16/24, at ¶ 4. It also sought to admit testimony from various witnesses regarding Winslow's masturbating in front of others and viewing photographs of young children on his cell phone. **See id.** at ¶ 7. It listed the following proposed testimony:

> a. Testimony of Ashley Rote, former paramour of [Winslow's] brother, and former sexual partner of [Winslow], who is anticipated to testify concerning [Winslow's] proclivity for watching pornography on his cellular telephone;
>
> b. Testimony of Olivia Errichetto, paramour of [Winslow], who is anticipated to testify concerning [Winslow's] proclivity for watching pornography on his cellular telephone and his "foot fetish";
>
> c. Testimony of Alisha Maroni, former paramour of [Winslow] and mother of [Winslow's] child, who is anticipated to testify concerning [Winslow's] "obsession" with feet and prior instance of [Winslow] masturbating while looking at photographs of young children on his cellular phone; and

- 2 -

d. Testimony of various witnesses who are anticipated to testify concerning [Winslow's] proclivity toward masturbation in front of other individuals to the extent that [Winslow] gained the nicknames "Jackin' Jim," "Jackin Jimmy," "Jerkin' Jim," and/or "Jerkin' Jimmy."

*Id.* at ¶ 7(a)–(d).

The Commonwealth argued that Winslow's habitual viewing of "pornography on a cellular phone and an obsession with feet are evidence of a common scheme or plan" because "they both play a crucial part in the facts alleged to have taken place in the incident at hand." *Id.* at ¶ 10. Additionally, the Commonwealth claimed that Winslow's "proclivity . . . toward watching pornography on a cellular phone and masturbating in front of other individuals is crucial" to identifying Winslow as the perpetrator. *Id.* at ¶ 11. The Commonwealth further asserted that Winslow's actions were "distinctive and so nearly identical as to become the signature of the same perpetrator." *Id.* ¶ 12 (quoting *Commonwealth v. Tyson*, 119 A.3d 353, 359 (Pa.Super. 2015)) (*en banc*).

The Commonwealth also moved to preclude "evidence concerning the purported sexual encounter between [Winslow] and Ms. Rote, along with any and all evidence concerning any and all confrontations between [Winslow] and the minor victim's father, Robert Winslow." *Id.* at 5 (unpaginated). It claimed that the evidence was irrelevant because it took place after the alleged crimes.

At a hearing on the motions, the Commonwealth argued that the proposed testimony about Winslow's tendency to watch pornography on his phone showed "[a] signature, a plan" and "motive or intent." N.T., Motions

Hearing, 1/26/24, at 6, 7. The Commonwealth noted that Rote and Winslow had sex after the victim informed Rote about Winslow's entering her room. It maintained that the victim's father became aware of the sexual relationship between Winslow and Rote that same day, resulting in Winslow and the victim's father fighting. *See id.* at 9-10. Winslow argued that this information was "relevant to show the jury that Mr. Winslow doesn't need to engage in the conduct that's alleged. He has a perfectly viable sexual relationship that's consensual with an adult individual that he basically lives with and frequently had sex." *Id.* at 11. The Commonwealth did not present any argument regarding Winslow's motion to preclude it from referring to Winslow's niece as a victim. *See id.* at 20-21.

The court granted Winslow's motion to preclude Winslow's niece from being referred to as a "victim." It concluded that it is for the jury to decide "whether the allegations are true" and "whether the Complaining Witness is legally a victim in this matter." Opinion and Order, filed 2/5/24, at 5.

It denied the Commonwealth's motion to present testimony about Winslow's alleged pornography use, masturbation, nicknames, and foot fetish. The court determined that the Commonwealth failed to provide evidence "that watching pornography on a cellular telephone is a signature of [Winslow] to the exclusion of other individuals." *Id.* at 9. It found that evidence of Winslow's alleged foot fetish would not "single out and establish [Winslow] as the person who would have committed this crime" and that the prejudice outweighed any probative value. *Id.* The court further determined that "there

- 4 -

is no similarity in the testimony that is proposed by the Commonwealth to establish that this evidence should be admitted under Rule 404," because there was no evidence that the victim would testify that Winslow viewed young children on his phone while he was in her bedroom. *Id.* at 10. It excluded evidence of Winslow's nicknames because the "Commonwealth has not identified what witness would offer this evidence" and the risk of unfair prejudice outweighed the evidence's probative value. *Id.*

The court also denied the Commonwealth's motion to exclude testimony about Rote and Winslow's sexual relationship as well as the fight between Winslow and the victim's father. The court determined that the testimony was relevant because it "is the development of the event which also includes the disclosure and/or non-disclosure of the allegation of [Winslow's] criminal acts perpetrated on the Complaining Witness." *Id.* at 13.

This timely appeal followed, with the Commonwealth certifying that the order will terminate or substantially handicap the prosecution. *See* Pa.R.A.P. 311(d). The Commonwealth also filed a Pa.R.A.P. 1925(b) statement, pursuant to court order.

In its brief to this Court, the Commonwealth raises the following issues:

1. Whether the trial court committed an error of law/abuse of discretion in granting [Winslow's] Pre-Trial Motion to preclude the Commonwealth from referring to the victim in this matter as a "victim"?

2. Whether the trial court committed an error of law/abuse of discretion in denying the Commonwealth's Motion to Introduce Evidence Pursuant to Pa.R.E. 404 concerning [Winslow's] well-known proclivity for watching

pornography on his cell phone, his "foot fetish," his past instances of masturbating in front of others and his attraction toward younger individuals?

3. Whether the trial court committed in [sic] an error of law/abuse of discretion in denying the Commonwealth's Motion to preclude testimony concerning the events that allegedly took place on the evening after the events that form the basis of the charges in this matter?

Commonwealth's Br. at 7 (suggested answers omitted).

Before we review the merits of the Commonwealth's claims, we address the trial court's suggestion that the Commonwealth waived all issues for appellate review due to a vague Rule 1925(b) statement. The court found that the Commonwealth's Rule 1925(b) statement "does not set forth in any manner how this [c]ourt has allegedly erred," leaving it "to guess where in the record and how this [c]ourt" abused its discretion. Opinion Pursuant to Pennsylvania Rule of Appellate Procedure No. 1925(a) ("1925(a) Op."), filed 3/6/24, at 3-4.

We decline to find waiver. An appellant's Rule 1925(b) statement "must identify the errors with sufficient specificity for the trial court to identify and address the issues the appellant wishes to raise on appeal." **Commonwealth v. Bonnett**, 239 A.3d 1096, 1106 (Pa.Super. 2020). A vague Rule 1925(b) statement "can result in waiver of issues on appeal." **Id.** A Rule 1925(b) statement may be considered vague where it prevents "the court from identifying the issue to be raised on appeal." **Commonwealth v. Dowling**, 778 A.2d 683, 687 (Pa.Super. 2001).

However, a 1925(b) statement that is vague on its face can be deemed sufficiently precise if the lower court is able to understand the issues from the context of the litigation in the lower court. **See Commonwealth v. Rogers**, 250 A.3d 1209, 1224 (Pa. 2021).[2] That is the situation here. The Commonwealth's concise statement identified three areas where it believed the court abused its discretion: 1) precluding the Commonwealth from identifying the complaining witness as "the victim"; 2) precluding testimony regarding Winslow's alleged tendency to pornography use and masturbation, his foot fetish, watching pornography in front of others and his attraction to younger individuals; and 3) denying the preclusion of testimony about Winslow's alleged sexual contact with the victim's father's girlfriend and an altercation between Winslow and the victim's father. From the litigation on the

---

[2] In **Rogers**, the Pennsylvania Supreme Court explained,

> Nevertheless, the weight-of-the-evidence claim was readily understandable from context. Appellant's theory, for which he provided his own supporting testimony, was that he was innocent of all charges in relation to the three adult victims because he did not physically attack or steal from any of them, and his intercourse with all of them was consensual. Further, and as noted, in his post-sentence motion Appellant articulated the evidentiary-weight claim at some length as to the three adult victims, and those were the same individuals he mentioned in his Rule 1925(b) statement. The [C]ommon [P]leas [C]ourt summarized the victims' credited testimony contradicting Appellant's theory and determined that the verdicts were not contrary to the weight of the evidence. Thus, as in [**Commonwealth v.**] **Laboy**, [936 A.2d 1058 (Pa. 2007)], the trial court had no difficulty apprehending the claim as set forth in the concise statement and addressing its substance.

**Rogers**, 250 A.3d at 1224-25.

motions *in limine*, the trial court understood the nature of the Commonwealth's precise arguments and addressed them in a Rule 1925(a) opinion. The Commonwealth's Rule 1925(b) statement was not "so vague as to prevent the court from identifying the issue to be raised on appeal." **Dowling**, 778 A.2d at 687. We now address the merits of the Commonwealth's claims.

We review the grant or denial of motions *in limine* for an abuse of discretion. **Commonwealth v. Cook**, 231 A.3d 913, 919 (Pa.Super. 2020). An abuse of discretion only occurs when the court "has reached a conclusion that overrides or misapplies the law, or when the judgment exercised is manifestly unreasonable, or is the result of partiality, prejudice, bias or ill-will." **Id.** (citation omitted). When reviewing a trial court's legal conclusions, our standard of review is *de novo* and our scope, plenary. **Commonwealth v. Wilmer**, 194 A.3d 564, 567 (Pa. 2018).

First, the Commonwealth maintains that the court erred by precluding it from identifying Winslow's niece as "the victim." It notes that the order granting Winslow's motion provided no legal authority for its decision and its Rule 1925(a) opinion cited only definitions for the word victim. It further finds **Commonwealth v. Rickrode**, No. 746 MDA 2022, 2023 WL 315887 (Pa.Super. filed Jan. 19, 2023) (unpublished mem.), and **Commonwealth v. Martin**, No. 775 WDA 2020, 2021 WL 5294016 (Pa.Super. filed Nov. 15, 2021) (unpublished mem.), persuasive. Based on these two cases, the Commonwealth requests that we "remand the matter to the lower court with

instruction to issue a preliminary cautionary instruction in lieu of eliminating any reference to the 'victim'[.]" Commonwealth's Br. at 13-14.

The trial court concludes that it would have been an invasion of the purview of the jury to allow the Commonwealth to refer to Winslow's niece as a "victim." The court references the Crime Victims Act and dictionary definitions of "victim" and concludes that these definitions "require a finding that the individual who may be referred to as victim has had something occur to that individual." 1925(a) Op. at 6. It notes that the Commonwealth provided no case law to support its argument.

At the motions hearing, the Commonwealth did not cite any legal authority supporting its position that it should be allowed to refer to the complainant as a victim. On appeal, the Commonwealth notes two unpublished cases from this Court where we found no abuse of discretion in permitting the Commonwealth to refer to a decedent as a victim. **See Rickrode**, 2023 WL 315887, at *2-*3 (finding no abuse of discretion where trial court denied defendant's motion *in limine* to preclude the decedent from being referring to as a victim and gave a cautionary jury instruction); **Martin**, 2021 WL 5294016, at *3-*5 (finding no abuse of discretion where trial court denied defendant's pretrial motion to preclude decedent from being referred to as the "victim" and gave cautionary jury instruction). However, these cases are not binding, and perhaps most importantly, they do not reference binding authority that would require a court to permit the Commonwealth to refer to the complainant as a victim. Additionally, in both **Rickrode** and **Martin**, there

was no dispute that the defendant had shot and killed the decedent, and the defendant argued self-defense. *See Rickrode*, 2023 WL 315887, at *1; *Martin*, 2021 WL 5294016, at *1. The instant case presents no such circumstances. Here, there is uncertainty regarding the alleged crimes against the complainant. In the circumstances presented, we cannot say the trial court abused its discretion in granting Winslow's motion. *See Cook*, 231 A.3d at 919.

Next, the Commonwealth argues that the court erred by precluding testimony about Winslow's alleged tendency to masturbate and watch pornography on his phone and in front of others, his foot fetish, and his attraction to younger individuals. It maintains that the court misinterpreted the standard under Rule 404 when it determined that the Commonwealth failed to prove that the alleged acts were "a signature of [Winslow] **to the exclusion of other individuals**." Commonwealth's Br. at 15 (quoting Opinion and Order at 9) (emphasis added by Commonwealth). The Commonwealth argues that Winslow's pornography use, foot fetish, and masturbation in front of others, collectively "forms a unique 'recipe' that establishes the basis for [Winslow's] common scheme." *Id.* at 16. It further argues that the trial court failed to apply the appropriate standard for weighing the probative value against any potential prejudice of the evidence.

Rule 404(b)(1) of the Pennsylvania Rules of Evidence prohibits the admission of "[e]vidence of any other crime, wrong, or act . . . to prove a person's character in order to show that on a particular occasion the person

acted in accordance with the character." Pa.R.E. 404(b)(1). Such evidence may nonetheless be admissible for a proper purpose, such as "to show motive, identity, lack of accident or common plan or scheme," so long as "the probative value of the evidence outweighs its potential for unfair prejudice." **Commonwealth v. Hicks**, 156 A.3d 1114, 1125 (Pa. 2017); Pa.R.E. 404(b)(2).

"[W]here there is a striking similarity — or logical connection — between the proffered bad acts and the underlying charged crime[,]" our Courts have permitted such evidence as evidence of a common plan or scheme. **Hicks**, 156 A.3d at 1125; **Commonwealth v. Arrington**, 86 A.3d 831, 844 (Pa. 2014); **Tyson**, 119 A.3d at 359. A "logical connection" occurs where the "proof of one [crime] will naturally tend to show that the accused is the person who committed the other." **Commonwealth v. Rush**, 646 A.2d 557, 560 (Pa. 1994) (quoting **Commonwealth v. Wable**, 114 A.2d 334, 336 (Pa. 1955)). When considering the admissibility of evidence under the common plan or scheme exception, a court should "examine the details and surrounding circumstances of each criminal incident to assure that the evidence reveals criminal conduct which is distinctive and so nearly identical as to become the signature of the same perpetrator." **Tyson**, 119 A.3d at 358-59 (quoting **Commonwealth v. G.D.M., Sr.**, 926 A.2d 984, 987 (Pa.Super. 2007)). The court should consider relevant factors such as "the habits or patterns of action or conduct undertaken by the perpetrator to commit crime, as well as the

time, place, and types of victims typically chosen by the perpetrator." *Id.* (quoting *G.D.M., Sr.*, 926 A.2d at 987). The court must also:

> [B]alance the potential prejudicial impact of the evidence with such factors as the degree of similarity established between the incidents of criminal conduct, the Commonwealth's need to present evidence under the common plan exception, and the ability of the trial court to caution the jury concerning the proper use of such evidence by them in their deliberations.

*Id.* (quoting *G.D.M., Sr.*, 926 A.2d at 987).

The Pennsylvania Supreme Court's decision in *Commonwealth v. Arrington*, 86 A.3d 831 (Pa. 2014), guides us here. The Commonwealth charged Arrington with first-degree murder and persons not to possess a firearm for the murder of his girlfriend. *See* 18 Pa.C.S.A. §§ 2502(a)(1) and 6105(a)(1). The facts giving rise to his charges included that:

> [Arrington] had been romantically involved with [the victim], that he had beaten her on numerous occasions, that he had threatened to kill [the victim] and her family, and that New York authorities attempted to revoke his parole shortly before the murder because [the victim] reported the threats and beatings to his parole officer.

*Arrington*, 86 A.3d at 841. The Commonwealth sought to introduce evidence that Arrington had threatened and assaulted three previous girlfriends when they attempted to call off the relationship or if they spoke with other men. It maintained that it established "a common scheme to control girlfriends through violence and intimidation." *Id.* at 842. The trial court admitted the testimony. On appeal, the Supreme Court determined that the trial court did

- 12 -

not abuse its discretion. The Court noted that the testimony from Arrington's girlfriends

> demonstrated repeated efforts to preserve intimate relationships through harassment, intimidation, and physical violence culminating in the use of a deadly weapon. In each instance, [Arrington]: (1) monitored his girlfriend's daily activities; (2) resorted to violence when his partner wanted to end a relationship or interacted with other men; (3) inflicted head or neck injuries with his fist, a handgun, or an edged weapon; and (4) harmed or threatened to harm members of his girlfriend's family or male acquaintances that he viewed as romantic rivals.

*Id.* at 844. "Given the shared characteristics of each relationship," the Court concluded that the evidence was admissible to show "a common plan or scheme" under Rule 404(b)(2). *Id.* at 844, 845.

Herein, we find no abuse of discretion in the denial of the motion. We disagree with the court's determination that the Commonwealth was required to present evidence that the proposed bad acts were "a signature of [Winslow] to the exclusion of other individuals." Opinion and Order at 9. The standard is somewhat different. The Commonwealth was required to show that the proposed bad acts evidence revealed "criminal conduct which is distinctive and so nearly identical as to become the signature of the same perpetrator." *Tyson*, 119 A.3d at 359.

We nonetheless affirm this aspect of the order. To the extent the Commonwealth's motion sought to admit testimony about Winslow's "proclivities" – for watching pornography on his cell phone, masturbating in front of others, and his "foot fetish" – such testimony constitutes

impermissible character testimony. The sole testimony offered about a prior act related to an incident in which Winslow allegedly masturbated while looking at photographs of young children on his cell phone. This act, however, bore little semblance to the allegations here, involving claims that defendant went into the victim's room, masturbated, and asked her to help by rubbing his penis with her feet. Furthermore, the proffered testimony did not involve acts so distinctive as to be a criminal's "signature."

The Commonwealth's final issue challenges the court's denial of its motion to preclude the admission of defense evidence. We do not address the merits of this claim.

The Commonwealth's right to interlocutory appeals under Rule 311(d) is limited to "pretrial ruling[s] result[ing] in the suppression, preclusion, or exclusion of *Commonwealth* evidence." ***Commonwealth v. Shearer***, 882 A.2d 462, 467 (Pa. 2005) (quoting ***Commonwealth v. Cosnek***, 836 A.2d 871, 877 (Pa. 2003)) (emphasis added). In other words, "the Commonwealth's right to interlocutory appeals does not extend to appealing the admission of defense evidence." ***Cosnek***, 836 A.2d at 876.

Here, the Commonwealth challenges the court's denial of its motion to preclude testimony about Winslow's alleged sexual relationship with Rote and a fight between Winslow and the victim's father. Under Rule 311(d), the Commonwealth does not have a right to challenge the court's order regarding this evidence. We therefore lack jurisdiction to address this issue. ***But see Commonwealth v. Jerdon***, 229 A.3d 278, 283 (Pa.Super. 2019) (addressing

Commonwealth appeal from order granting defense motion to admit evidence where Commonwealth argued that order should be considered collateral under Rule 313 of Pennsylvania Rules of Appellate Procedure).

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 04/15/2025