**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JOEL S. REYES-ACOSTA | : | |
| | : | |
| Appellant | : | No. 469 MDA 2022 |

Appeal from the Judgment of Sentence Entered October 26, 2021,
in the Court of Common Pleas of York County,
Criminal Division at No(s):  CP-67-CR-0007777-2019.

BEFORE:  PANELLA, P.J., OLSON, J., and KUNSELMAN, J.

MEMORANDUM BY KUNSELMAN, J.:          **FILED: JULY 26, 2023**

Joel Reyes-Acosta appeals from the judgment of sentence entered after a jury found him guilty of indecent assault and harassment.[1]  We reverse and remand for a new trial based on the Commonwealth's violation of ***Brady v. Maryland***, 373 U.S. 83 (1963).

On October 2, 2019, Officer Thomas Wales of the Springettsbury Township Police Department filed a criminal complaint charging Reyes-Acosta based on an incident on September 13, 2019.  The case proceeded to a jury trial on July 20 and 21, 2021.  The trial court recounted the evidence:

> The victim, [M.G.], worked as an assistant manager at Suburban Park Apartments where [Reyes-Acosta] lived.  [M.G.] had to interact with [Reyes-Acosta] when he would bring in his rent checks.  [Any time he saw her, Reyes-Acosta] would tell [M.G.] she was beautiful or comment about her height or outfit.

---

[1] 18 Pa.C.S.A. §§ 3126(a)(1) and 2709(a)(4).

One time [Reyes-Acosta] stated she "looked tired and that he wanted to give [her] a massage and lick the oil off [her] body."

[M.G.] stated [Reyes-Acosta] made her uncomfortable for months prior to the incident at hand. Approximately a week before the incident in question, at a community event at the apartment complex, [Reyes-Acosta] pinned [M.G.] between a bush and her car stating, "he wanted to eat [her] pussy and eat [her] ass." [M.G.] informed her manager, Stephanie Hartranft …, who was not there but was able to send her daughter in to ensure [M.G.] was not alone. None of the incidents prior to September 13, 2019, were reported to the police.

On September 13, 2019, the date of the incident leading to the charges in the instant case, [M.G.] … was smoking outside her office when [Reyes-Acosta] sat down next to her, inquiring about how to remove himself from his lease. When the conversation was finished, [M.G.] went inside to the bathroom to throw her cigarette out like she normally would, and when she turned around, [Reyes-Acosta] "was standing there with his arms up on the door blocking [her] from coming back." She hurriedly walked out but, in the hallway, [Reyes-Acosta] put his arms around her "waist and his hand on [her] butt and told [her] he wanted to eat [her] pussy and ass and tried to kiss [her]." To avoid [Reyes-Acosta's] open-mouth kiss, [M.G.] turned her head, so [Reyes-Acosta] got saliva on her face instead of her lips.

[M.G.] "pushed [past] him" and got back to work while [Reyes-Acosta] made himself some coffee. [Reyes-Acosta] saw a check had fallen on the floor next to [M.G.], so [Reyes-Acosta] approached her and took his hand and rubbed it down [M.G.'s] back and down into her pants. [H]e started in between her shoulder blades and as he rubbed downward, she pushed herself back into her chair to stop his hand from going any further.

Once [Reyes-Acosta] left, [M.G.] notified Stephanie, a maintenance staff member, and the police about the incident. Approximately fifteen minutes after the incident, a tenant named Christine [Heinrich] had come to the office to hand out fliers, but stayed and comforted [M.G.] until police came. Although the police were called, Stephanie confirmed that [M.G.] did not give [Reyes-Acosta] a no trespass order for the leasing office.

On September 18, 2019, Officer Thomas Wales received an apology letter from Stephanie that was written by [Reyes-Acosta]. In the letter, [Reyes-Acosta] apologized for the

"misunderstanding" and thanked [M.G.] for "always telling me to take care of my family."

Trial Court Opinion, 6/6/22, at 2–4.

The jury found Reyes-Acosta guilty of indecent assault and harassment. On October 26, 2021, the trial court sentenced Reyes-Acosta to serve 2 weeks to 23 months of incarceration concurrent with 12 months of probation and to pay $28,556.82 in restitution. Reyes-Acosta filed a post-sentence motion claiming, *inter alia*, that the Commonwealth violated **Brady** by failing to provide until after sentencing a letter from the workers' compensation insurer that paid benefits to M.G. related to this incident. The trial court heard and denied Reyes-Acosta's post-sentence motion after a hearing on February 16, 2022. Reyes-Acosta timely appealed. Reyes-Acosta and the trial court complied with Pennsylvania Rule of Appellate Procedure 1925.

Reyes-Acosta presents five issues for review:

A. Was the evidence insufficient to support the charges, where the Commonwealth did not establish that Mr. Reyes-Acosta had contact with the complainant's intimate parts, and the Commonwealth's evidence was wholly unreliable?

B. Did the lower court err and abuse its discretion in granting the Commonwealth's motion *in limine* and admitting other acts evidence, where the court failed to conduct the balancing test that [Pa.R.E. 404(b)] requires, and the Commonwealth did not meet an exception to the rule against the admission of this type of evidence?

C. Did the trial court err and abuse its discretion in denying Mr. Reyes-Acosta's post-sentence motion seeking a new trial based on a **Brady** violation, where the Commonwealth withheld the complainant's worker's compensation letter containing favorable and material information until Mr. Reyes-Acosta's sentencing?

- 3 -

D. Was the verdict against the weight of the evidence, where the complainant embellished her testimony and the only other witness admitted to "being forgetful?"

E. Did the trial court abuse its discretion at sentencing by failing to state on the record its reason for imposing a term of incarceration when the Sentencing Guidelines recommended a sentence as low as probation?

Reyes-Acosta's Brief at 7–8.

## A. Sufficiency of the Evidence

Reyes-Acosta's first issue is a challenge to the sufficiency of the evidence. His argument is twofold. First, he argues that M.G.'s cheek and pants-covered buttocks are not "sexual or intimate parts" of her body, which the Commonwealth had to prove that Reyes-Acosta touched for the offense of indecent assault. Second, he contends that the testimony of Heinrich and M.G. was so inherently unreliable that it was insufficient to prove either crime.

We employ a well-settled scope and standard of review:

A claim challenging the sufficiency of the evidence is a question of law. Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt. Where the evidence offered to support the verdict is in contradiction to the physical facts, in contravention to human experience and the laws of nature, then the evidence is insufficient as a matter of law. When reviewing a sufficiency claim[,] the court is required to view the evidence in the light most favorable to the verdict winner giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence.

*Commonwealth v. Johnson*, 180 A.3d 474, 478 (Pa. Super. 2018) (quoting

*Commonwealth v. Widmer*, 744 A.2d 745, 751 (Pa. 2000)). Testimony

from a single witness is sufficient to sustain a conviction if it addresses every

element of the crime charged. *Id.* at 481; *see also* 18 Pa.C.S.A. § 3106 ("The testimony of a complainant need not be corroborated in prosecutions under [Chapter 31].").

Section 3126 of the Crimes Code provides that "[a] person is guilty of indecent assault if the person has indecent contact with the complainant . . . and the person does so without the complainant's consent." 18 Pa.C.S.A. § 3126(a)(1). "Indecent contact" is "[a]ny touching of the sexual or other intimate parts of the person for the purpose of arousing or gratifying sexual desire, in any person." 18 Pa.C.S.A. § 3101. The "touching" is not required to involve skin-to-skin contact; it is enough to prove touching through a layer of clothing. *Commonwealth v. Ricco*, 650 A.2d 1084, 1086 (Pa. Super. 1994). Further, "sexual or other intimate parts" includes any "body part that is personal and private, and which the person ordinarily allows to be touched only by people with whom the person has a close personal relationship, and one which is commonly associated with sexual relations or intimacy." *Commonwealth v. Gamby*, 283 A.3d 298, 313–14 (Pa. 2022)[2] (footnote omitted); *accord Commonwealth v. Capo*, 727 A.2d 1126, 1127 (Pa. Super. 1999) (holding evidence sufficient where a defendant tried to kiss a complainant's mouth but reached only her face and neck and rubbed her shoulders, back, and stomach).

---

[2] *Gamby* was decided September 29, 2022, after Reyes-Acosta filed his brief.

Here, the evidence was sufficient to convict Reyes-Acosta of indecent assault. M.G. testified that Reyes-Acosta "put [his arms] around [her] waist and his hand on [her] butt and told [her] that he wanted … to eat [her] pussy and eat [her] ass and tried to kiss [her]" on her mouth, getting saliva on her face. N.T., 7/21/21, at 104. The jury was free to believe this testimony, which established that Reyes-Acosta touched M.G.'s sexual or intimate parts. His statement about wanting to "eat" her "pussy" and "ass" supports the inference that he had the purpose of arousing or gratifying sexual desire.

Likewise, the testimony of the Commonwealth's witnesses was not so inherently unreliable as to be insufficient to support Reyes-Acosta's guilt. While Reyes-Acosta attacks Heinrich's corroborating testimony based on her forgetfulness, corroboration is not required. **Johnson**, 180 A.3d at 481; 18 Pa.C.S.A. § 3106. Although Reyes-Acosta asserts that M.G. had a motive to lie and had not reported the prior incident until she reported the later incident, he indicates no fundamental inconsistencies that render the Commonwealth's evidence insufficient. Therefore, Reyes-Acosta's sufficiency challenges fail.

### B. Evidence of Reyes-Acosta's Other Acts

Reyes-Acosta's second issue challenges the ruling *in limine*[3] which allowed the Commonwealth to introduce evidence that the week before

_____

[3] The Honorable Craig T. Trebilcock ruled on this matter by opinion dated May 27, 2021. The Honorable Amber A. Kraft, who presided at trial, followed the ruling based on the coordinate jurisdiction rule. Trial Court Opinion, 6/6/22, at 11 (citing **Commonwealth v. Starr**, 664 A.2d 1326, 1331 (Pa. 1995)).

September 13, 2019, Reyes-Acosta pinned M.G. between a bush and her car and told her that "he wanted to eat [her] pussy and eat [her] ass." *See* N.T., 7/21/21, at 106. The trial court ruled that this evidence was admissible under Pennsylvania Rule of Evidence 404(b)(2). Reyes-Acosta argues that the Commonwealth failed to establish a permitted use under Rule 404(b)(2) and that the trial court failed to properly weigh the probative value and potential for unfair prejudice of the evidence. He submits that this error was not harmless.

> "When ruling on a trial court's decision to grant or deny a motion *in limine*, we apply an evidentiary abuse of discretion standard of review." ***Commonwealth v. Hutchison***, 164 A.3d 494, 500 (Pa. Super. 2017). "An abuse of discretion may not be found merely because an appellate court might have reached a different conclusion." ***Cardinale v. R.E. Gas Dev., LLC***, 154 A.3d 1275, 1286 (Pa. Super. 2017). "Instead, an abuse of discretion occurs only where the trial court has reached a conclusion that overrides or misapplies the law, or when the judgment exercised is manifestly unreasonable, or is the result of partiality, prejudice, bias or ill-will." ***Id.*** Further, to the extent we are required to review the trial court's conclusions of law, "our standard of review is *de novo* and our scope of review is plenary." ***Commonwealth v. Wilmer***, 194 A.3d 564, 567 (Pa. 2018).

***Commonwealth v. Cook***, 231 A.3d 913, 919 (Pa. Super. 2020) (citations altered).

"Relevance is the threshold for admissibility of evidence." ***Commonwealth v. Tyson***, 119 A.3d 353, 358 (Pa. Super. 2015) (citing ***Commonwealth v. Cook***, 952 A.2d 594, 612 (Pa. 2008)). "Evidence is relevant if it logically tends to establish a material fact in the case, tends to make a fact at issue more or less probable or supports a reasonable inference

or presumption regarding a material fact." *Id.* (quoting *Commonwealth v. Drumheller*, 808 A.2d 893, 904 (Pa. 2002)); *see* Pa.R.E. 401. Relevant evidence is generally admissible, except as provided by law. Pa.R.E. 402. As to the admissibility of a person's other acts, Pennsylvania's rule provides:

**Other Crimes, Wrongs, or Acts.**

(1) Prohibited Uses. Evidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.

(2) Permitted Uses. This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident. In a criminal case this evidence is admissible only if the probative value of the evidence outweighs its potential for unfair prejudice.

Pa.R.E. 404(b)(1), (2).

Here, the Commonwealth's May 14, 2021 motion *in limine* asserted that Reyes-Acosta's other act was admissible to prove Reyes-Acosta's intent, to rebut an anticipated defense of mistake or accident, and to show the history of the case. In granting the motion, the court reasoned that the evidence was probative of motive and intent, established Reyes-Acosta's sexual interest in M.G., and was *res gestae* evidence. Opinion and Order, 5/27/21, at 1–3. At trial, the court instructed the jury that the only purpose for which it could consider Reyes-Acosta's other act was as evidence of his intent or motive. N.T., 7/21/21, at 213. We will confine our analysis to this theory of relevance.

The court properly found the evidence to be relevant. Reyes-Acosta's intent and motive were both material facts in this case. To prove indecent

assault, the Commonwealth had to establish that Reyes-Acosta had the purpose of arousing or gratifying sexual desire. 18 Pa.C.S.A. § 3101 (defining "indecent contact"); *see Gamby*, 283 A.3d at 314 n.17 (interpreting this definition to require proof of a touch and a purpose). And motive, while not an element of a crime, is always relevant in criminal cases. *Commonwealth v. Tedford*, 960 A.2d 1, 42 (Pa. 2008) (citing *Commonwealth v. Gwaltney*, 442 A.2d 236, 241 (Pa. 1982)). Reyes-Acosta's prior act made it more probable that he intended to arouse or gratify sexual desire with M.G. on September 13, 2019, based on the similar location, conduct, and language, the close timing, and the same targeted person. Therefore, we agree with the trial court that the evidence was relevant as a matter of law.

Likewise, the court did not abuse its discretion in concluding that the probative value of the evidence outweighed the potential for unfair prejudice. "Unfair prejudice" "means a tendency to suggest a decision on an improper basis or to divert the jury's attention away from its duty of weighing the evidence impartially." *Commonwealth v. Gilliam*, 249 A.3d 257, 272 (Pa. Super. 2021) (quoting *Commonwealth v. Dillon*, 925 A.2d 131, 141 (Pa. 2007)). The court reasoned that evidence with the same general location and manner as the charged crimes was probative and not unduly prejudicial. Opinion and Order, 5/27/21, at 2–3. Reyes-Acosta attacks the brevity of the court's analysis and the lack of a hearing on the motion *in limine*. However, these do not show that the court abused its discretion in its weighing process. Rule 404(b) does not require the trial court to hold hearing before ruling *in*

*limine*. And the trial court had ample opportunity to review the case as submitted. The decision to allow this evidence was not manifestly unreasonable, not the result of bias, ill-will, or prejudice, and not a misapplication of the law. Therefore, no relief is due on Reyes-Acosta's second issue.

### C. Discovery

Reyes-Acosta's third issue involves the Commonwealth's failure to give a letter dated July 27, 2020 to the defense before trial.[4] The letter was addressed from the workers' compensation insurer for M.G.'s employer to a victim/witness coordinator in the York County District Attorney's Office. It reflects that M.G. made a workers' compensation report on September 20, 2019, and it lists her injury as "No Physical Injury - Mental Stress." The letter states that the insurer determined that M.G. was within the course and scope of her employment at the time of the incident on September 13, 2019; therefore, the insurer writes that it can make a full claim for benefits. The insurer asks that restitution be ordered in Reyes-Acosta's criminal case for $28,556.82 that the insurer had paid on M.G.'s workers' compensation claim, which includes $4773.91 for "Medical" and $23,782.91 for "Indemnity."

The Commonwealth provided the letter to the defense on October 26, 2021, the day of sentencing. At sentencing, the Commonwealth asked for

---

[4] The letter appears in the certified record as an attachment to the Commonwealth's amended response to Reyes-Acosta's post-sentence motion.

restitution of $28,556.82 to the insurer, which the court then imposed as part of Reyes-Acosta's sentence. In his post-sentence motion, Reyes-Acosta claimed the failure to provide this letter prior to trial was a *Brady* violation.

On appeal, Reyes-Acosta maintains that the Commonwealth's failure to provide this letter before trial violated *Brady*. He contends that it was favorable and material to the defense because it could show that M.G. had a financial incentive to fabricate her allegations, that is, a motive to lie. Reyes-Acosta also suggests that this letter would have alerted trial counsel to the workers' compensation case file, which could contain other material to impeach M.G.

The trial court reasoned, and the Commonwealth argues, that there was no *Brady* violation because the letter was neither exculpatory nor the basis for impeachment. Moreover, the Commonwealth endorses the trial court's determination that evidence of the workers' compensation case was not in the exclusive possession of the Commonwealth.

On a question of whether an alleged *Brady* violation warrants a new trial, our standard of review is *de novo* and our scope of review is plenary. *Commonwealth v. Bagnall*, 235 A.3d 1075, 1084 (Pa. 2020) (citing *Commonwealth v. Smith*, 131 A.3d 467, 472 (Pa. 2015)).

> The law governing alleged *Brady* violations is well-settled. In *Brady*, the United States Supreme Court held that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution. The Supreme Court subsequently held that the duty to disclose such evidence is

- 11 -

applicable even if there has been no request by the accused, and that the duty may encompass impeachment evidence as well as directly exculpatory evidence. Furthermore, the prosecution's **Brady** obligation extends to exculpatory evidence in the files of police agencies of the same government bringing the prosecution.

**Commonwealth v. Lambert**, 884 A.2d 848, 853–54 (Pa. 2005) (quotations, brackets, and citations omitted). "There are three components of a true **Brady** violation: [t]he evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." **Commonwealth v. Maldonodo**, 173 A.3d 769, 774 (Pa. Super. 2017) (*en banc*) (quoting **Strickler v. Greene**, 527 U.S. 263, 281–82 (1999)).

The first component, favorability, includes evidence that is used only for impeachment purposes. **Lambert**, 884 A.2d at 845 (citing **United States v. Bagley**, 473 U.S. 667, 676–77 (1985)). Thus, evidence is favorable if it shows that a prosecution witness had a motive to lie or give helpful testimony for a personal benefit. **See, e.g.**, **Commonwealth v. Johnson**, 174 A.3d 1050, 1057 (Pa. 2017).

The second component requires the defendant to prove "that evidence was withheld or suppressed by the prosecution." **Commonwealth v. Haskins**, 60 A.3d 538, 547 (Pa. Super. 2012) (quoting **Commonwealth v. Paddy**, 15 A.3d 431, 451 (Pa. 2011)). We have explained:

> The withheld evidence must have been in the exclusive control of the prosecution at the time of trial. No **Brady** violation occurs when the defendant knew, or with reasonable diligence, could have discovered the evidence in question. Similarly, no violation

- 12 -

occurs when the evidence was available to the defense from a non-governmental source.

*Id.* (citing ***Paddy***). If the parties had equal access to the information that was withheld, there is no violation. ***Bagnall***, 235 A.3d at 1091 (quoting ***Commonwealth v. Morris***, 822 A.2d 684 (Pa. 2003)). However, a defendant may assume that the prosecution truthfully responds to discovery requests. *Id.* at 1092 (explaining that due diligence requires a reasonable effort to obtain the desired information).

The third component, materiality, means "a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different," such as when "the favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict." ***Lambert***, 884 A.2d at 854 (quoting ***Strickler***, 527 U.S. at 280, 290). However, evidence is not material simply because it would allow the defense "to engage in a fishing expedition" for other evidence that would be helpful. ***Maldonodo***, 173 A.3d at 781.

Our research has not revealed, nor has Reyes-Acosta identified, any Pennsylvania case involving the prosecution's failure to disclose before trial a letter seeking restitution for a workers' compensation claim by the victim of a crime. However, we located a similar case from Florida, where a defendant was convicted of battering a bouncer in a fight at a bar. ***Deren v. State***, 15 So.3d 723, 724 (Fla. Dist. Ct. App. 2009) (*per curiam*). The bouncer pursued a workers' compensation claim after the fight. *Id.* The bar's insurer sent the prosecution a letter indicating that the insurer had paid the bouncer

$20,956.47 for medical bills and $2,946.84 for lost wages. *Id.* The prosecution withheld the letter until sentencing. The court observed on appeal that the bouncer would not have been entitled to compensation if he intended "to injure or kill … another." *Id.* (quoting Fla. Stat. § 440.09(3)). Therefore, the court determined that the letter could have shown that the bouncer had a financial motive to claim that the defendant was the initial aggressor. "This type of financial interest is a proper subject of cross examination." *Id.* The Florida appellate court ruled that the failure to provide the letter before trial violated *Brady*. *Id.* at 723–24 (applying the *Strickler* test).

We find the Florida case persuasive here based on the nearly identical facts. In both cases, the victim of an alleged crime at work pursued a workers' compensation claim and received a significant amount of money. Both insurers sent letters to the prosecution asking for restitution. And both prosecutors' offices withheld the letters until the day of sentencing.

Like the court in *Deren*, we apply the same three-element test to determine whether the prosecution's failure to turn over the letter before trial violated *Brady*. *Maldonodo*, 173 A.3d at 774 (citing *Strickler*).

First, the July 27, 2020 letter was favorable to Reyes-Acosta as potential impeachment evidence.[5] The letter reflected that M.G. received over $20,000.00 based on her workers' compensation claim. This is a significant personal benefit, which could have motivated M.G. to fabricate or exaggerate

---

[5] We avoid fishing for other favorable material from the workers' compensation file, confining our analysis to the letter itself. *Maldonodo*, 173 A.3d at 781.

her narrative if the incident did not occur as she had reported. The letter is therefore favorable for **Brady** purposes. **Johnson**, **supra**.

Second, the Commonwealth withheld the letter until after trial. The workers' compensation insurer sent the letter to a representative of the York County District Attorney's Office. Absent indication that the insurer also gave the letter to Reyes-Acosta or his counsel, it is evident that the letter was within the Commonwealth's exclusive possession and that Reyes-Acosta did not have equal access to it. As in the Florida case, the prosecution did not disclose the letter until the day of sentencing, when it asked the court to order Reyes-Acosta to pay restitution of $28,556.82. Therefore, the letter was withheld by the prosecution. **Haskins**, **supra**.

Third, the letter was material. M.G.'s credibility was central to the jury verdict in this case. Reyes-Acosta did not have the letter at trial and was not able to cross-examine M.G. about the financial benefit she received as a result of the incident that she alleged. There is a reasonable probability that the outcome of the case could have been different if Reyes-Acosta had been provided the letter before trial and the jury knew that M.G. had received a financial benefit from pursuing a workers' compensation case from the same incident. **Lambert**, 884 A.2d at 854. In this light, depriving the defense of the opportunity to cross-examine M.G. about this claim and apprise the jury of her possible motive to fabricate her allegations undermines confidence in the outcome of trial. **Id.**, **see Deren**, 15 So.3d at 724. Because the

Commonwealth violated ***Brady***, the trial court erred in denying Reyes-Acosta's post-sentence motion for a new trial.

In conclusion, the evidence was sufficient to convict Reyes-Acosta, and the trial court did not abuse its discretion by allowing evidence of the prior incidents. However, the Commonwealth violated its discovery obligations by withholding relevant impeachment evidence until after trial. Because we reverse and remand for a new trial, we need not address Reyes-Acosta's remaining claims.

Judgment of sentence vacated. Convictions reversed. Case remanded for new trial. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/26/2023